(No. 61765.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HENRY SPEARS, JR., Appellee.

*Opinion filed May 21, 1986.*

398

Neil F. Hartigan, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Scott Graham, Assistant Attorneys General, of Chicago, and John X. Breslin and Rita Kennedy Mertel, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The defendant, Henry Spears, Jr., was charged by information in the circuit court of Peoria County with attempted murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)) in the shooting of his estranged wife, Barbara Spears, and two counts of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2) in her shooting and that of Annette Keys. Following a jury trial, guilty verdicts were returned on all charged counts, as well as two uncharged counts of reckless conduct (Ill. Rev. Stat. 1983, ch. 38, par. 12—5(a)), which, at the defendant's request, the jury

was instructed to consider as a lesser included offense of the two armed-violence counts. The trial court entered judgment only on the attempted-murder count and one armed-violence count, and defendant was sentenced to a 20-year term of imprisonment. The appellate court, with one justice dissenting, reversed all five convictions and remanded the cause for a new trial, finding that the verdicts were legally inconsistent (130 Ill. App. 3d 1006). We allowed the State's petition for leave to appeal (94 Ill. 2d R. 315(a)).

The State adduced the following evidence at trial. On July 9, 1983, the defendant was visiting the apartment of his estranged wife, Barbara Spears. The first of two confrontations between the defendant and Barbara occurred at approximately 3 p.m. Barbara was seated at a card table in the middle of the sun porch with Annette Keys, Elizabeth Williams, and one other woman when the defendant called her into the bathroom. There, he told her not to embarrass him or make him look bad in front of the other women. When Barbara tried to leave the bathroom, the defendant pushed her up against the wall and began to choke her; he stopped choking her only when Elizabeth came to the door and asked what was happening. Barbara told the defendant that she would call the police if he did not leave. The defendant agreed to leave and telephoned Chester Adkins for a ride.

At approximately 8 p.m., Barbara was playing cards with the women on the sun porch. The defendant, who was still waiting for Adkins to arrive, came out onto the porch and asked Barbara to come in and talk with him. Barbara refused. About five minutes later Adkins arrived. Adkins wanted to leave, but the defendant told him to "wait a minute." A few minutes later, Barbara excused herself to answer a knock at the front door. On Barbara's way back to the card game, she walked past

the defendant, who was leaning in the doorway to the porch. Barbara testified that as she did, the defendant grabbed her right wrist.

Barbara stated that when she told the defendant to leave her alone he punched her in the face, knocking her to the floor. The defendant then pulled back his suit coat, drew a gun from a shoulder holster, and aimed it at Barbara as she tried to scramble to a side wall of the porch next to Annette Keys. The defendant fired a shot which struck Barbara before she reached the wall. Adkins grabbed the defendant from behind, but was unable to prevent him from firing a second shot, which hit both Barbara and Annette. Barbara fell to the floor. As she lay there, the defendant aimed the gun at her head. Sonny Coleman, another guest who had just arrived, rushed onto the porch and pushed the defendant's arm, causing the third shot to strike the floor near Barbara's head.

Barbara testified that the defendant had fired the shots "pretty quickly." She sustained bullet wounds to her chest and right arm. The second bullet grazed Keys' left arm.

The defendant testified that earlier in the evening Barbara had openly chastised him for answering her telephone. Shortly afterwards, he and Barbara had an argument in the bathroom about their treatment of one another in the presence of company. The argument ended without incident when Elizabeth knocked on the door to use the bathroom. He then arranged for a ride from Adkins. The defendant stated that when Adkins arrived he did not want to leave with him before mending things with Barbara. The defendant testified that, as Barbara walked past him after answering the front door, she pushed him. He stumbled, and the other woman jumped up and knocked over the card table. The defendant stated that someone suddenly grabbed him from behind,

and that he panicked and pulled his gun from the holster. Defendant further testified that during the struggle with this unknown assailant the gun accidentally discharged, though he was unsure exactly how many shots were fired. The defendant maintained that he did not intend to harm or kill anyone, and that he unintentionally pulled the trigger of the gun while struggling with Adkins.

To allow the jury to consider the defense theory that the shootings were unintended, pattern jury definitional and issues instructions were tendered for reckless conduct, along with those for armed violence (based on the great-bodily-harm form of aggravated battery) and attempted murder. The jury was further instructed to consider reckless conduct as a lesser included offense of the two armed-violence counts. Five verdict forms were provided: one for the attempted murder of Barbara, two for armed violence as to Barbara and Annette Keys, and two for reckless conduct as to Barbara and Annette. During the deliberations, the jury sent out a note asking, "Do we need to sign all five papers to the extent of guilty or not guilty, or by signing the more severe charges do we eliminate the need to sign the form for the lesser charge[?]" The trial judge instructed: "Sign a 'guilty' or 'not guilty' form of verdict as to each offense charged." After further deliberation, the jury found the defendant guilty on all counts.

The State initially contends that the defendant has waived any claim of legally inconsistent verdicts because he did not object to the trial court's instruction that the jury sign all five verdict forms guilty or not guilty, or allege inconsistent verdicts in his post-trial motion. We note that the State did not advance this argument in the appellate court. Nor did the State raise any waiver argument in its petition for leave to appeal asking us to hear and decide the merits of the inconsistent-verdict issue.

This court has recognized that an argument or issue not advanced in the State's brief in the appellate court is waived (87 Ill. 2d R. 341(e)(7)), and the State is, with the exception of jurisdictional matters, therefore precluded from later raising that ground for our consideration. (*People v. Fink* (1982), 91 Ill. 2d 237, 241; *People v. Caldwell* (1968), 39 Ill. 2d 346, 354.) Accordingly, we find that the State has waived this argument.

The question now before us is whether our recent decision in *People v. Hoffer* (1985), 106 Ill. 2d 186, is dispositive of the inconsistent-verdict issue in this case. In *Hoffer*, a jury convicted the defendant of murder, voluntary manslaughter, and involuntary manslaughter. At trial, the State presented evidence that the defendant had shot his sister's former boyfriend after a heated exchange of words outside the defendant's home. The defendant testified that he thought the former boyfriend, who often carried a handgun and allegedly had threatened the defendant at gunpoint once previously, was reaching for a gun at the time of the shooting. According to the defendant, the shotgun discharged as he lowered it with one hand and reached with the other to grab the gunstock. The jury received pattern jury instructions on murder, voluntary manslaughter, and involuntary manslaughter.

The issues instructions for murder and voluntary manslaughter required the State to prove that the defendant acted intending to kill or do great bodily harm, or knowing that his acts created a strong probability of death or great bodily harm. The issues instructions for involuntary manslaughter required the State to prove that the defendant acted recklessly in performing the acts which caused the victim's death. By returning guilty verdicts for murder and voluntary manslaughter, the jury necessarily found that the defendant acted knowingly and intentionally, while it also found that the

defendant acted recklessly but unintentionally by its guilty verdict for involuntary manslaughter. Because a finding that a defendant acted recklessly but unintentionally contradicts a finding that a defendant concommitantly acted intentionally or knowingly, this court concluded: "The mental states involved in each of these offenses are mutually inconsistent. Where a determination is made that one exists, the others, to be legally consistent, must be found not to exist." 106 Ill. 2d 186, 195.

The State argues that the rationale of *Hoffer* is inapplicable here where the jury could have rationally viewed the three shots fired by the defendant as separable acts, each accompanied by a different mental state, thereby supporting guilty verdicts on all counts. On its face, this proposition concedes logically inconsistent verdicts. Its premise places the State in the unenviably awkward, if not impossible, position of arguing that the jury could have *rationally* accepted in two verdicts the defense theory that the defendant acted recklessly but unintentionally, and then have *rationally* rejected the same theory in three other verdicts. Notwithstanding the apparent logical inconsistency of the verdicts, the State advances a new "explanation" of the facts presented at trial, which it argues could support the defendant's convictions on all charges.

In its brief the State explains that the defendant acted recklessly in drawing his gun and firing the first shot, which hit Barbara Spears. Thus, contrary to its position at trial, the State now asserts that the first shot is the basis for defendant's conviction for reckless conduct as to Barbara. The second shot, which defendant fired while struggling with Adkins, struck Barbara and Annette Keys. Without a comment or explanation of how or why defendant's culpable mental state, now urged to be that of recklessness, would suddenly change after the

first shot, the State asserts that the second shot supports defendant's armed-violence conviction as to each complainant. Similarly, without explanation or comment, the State submits that the third shot, which missed Barbara, supports the defendant's attempted-murder conviction. The State notably does not argue that any of the shots support the defendant's conviction for reckless conduct as to Annette Keys.

We agree with the State that where a claim of inconsistent guilty verdicts involves multiple shots or victims, the question is whether the trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent. (See *People v. Gross* (1977), 52 Ill. App. 3d 765.) That, however, is the extent of our agreement with the State on this point. We find that *People v. Gross* and the other cases relied upon by the State are inapposite. (*People v. Harris* (1982), 104 Ill. App. 3d 833; *People v. Roman* (1981), 98 Ill. App. 3d 703.) In each of those cases the State was not, as it is here, attempting to justify guilty verdicts in direct conflict with both its theory of the case at trial and the evidence it presented in support of that theory.

It would be manifestly unfair to allow the State, with the benefit of hindsight, to be able to create separable acts on appeal, neither alleged nor proved at trial. Such an inquiry does not operate in a vacuum. The manner by which a defendant is charged, and the jury is instructed, provides the essential framework for analyzing the consistency of jury verdicts in the troublesome context of multiple shots or victims. We believe that the substance of the allegations charging the defendant, as an unequivocal expression of prosecutorial intent (*People v. Baity* (1984), 125 Ill. App. 3d 50, 54), and what the evidence showed in relation to those charges, are of particular importance in determining whether guilty verdicts could rationally and consistently be based upon separable acts

accompanied by the requisite mental states.

We find, on the record in this case, that the jury could not have returned guilty verdicts based upon separable acts accompanied by different mental states of culpability. Our reading of the information charging the defendant reveals that the State did not charge a separate offense for each action or shot fired by the defendant. Count I charged the defendant with attempted murder, alleging as the substantial step that defendant, *"intending* to kill Barbara Spears, shot [her] twice with a handgun." (Emphasis added.) Count II charged the defendant with armed violence, alleging that the defendant *"knowingly* caused great bodily harm to Barbara Spears, in that he shot [her] twice." (Emphasis added.) Similarly, the offense of reckless conduct, as presented in the defense-tendered issues instructions, was based upon the same two shots which caused bodily harm to Barbara. Clearly, the charges overlapped one another.

Inasmuch as the charges were based in the information and issues instructions on the same conduct, any after-the-fact supposition of separable acts is untenable. Perhaps more importantly, the record belies any suggestion that the defendant's mental state changed during the shootings to support the State's hypothesis, even assuming *arguendo* that the defendant's acts were separable. As the State's principal complainant, Barbara testified that the shots were fired in rapid succession. The jury had to base its verdicts on the evidence presented. Neither the State nor the defense presented any evidence to suggest that the defendant's state of mind varied during the gunfire as the State now posits. Yet as to the firing of those shots, the jury, by its guilty verdicts, in effect found that the defendant acted recklessly (reckless conduct), intentionally (attempted murder), and knowingly (armed violence based on aggravated battery). Having determined that the jury could not rationally re-

turn guilty verdicts based on separable acts accompanied by otherwise mutually inconsistent mental states, we conclude, under the controlling authority of *People v. Hoffer* (1985), 106 Ill. 2d 186, that the guilty verdicts for the defendant's conduct towards Barbara are legally and logically inconsistent.

The State also argues that the attempted-murder conviction should be reinstated inasmuch as the jury was not instructed to consider reckless conduct as a lesser included offense of attempted murder. This argument is without merit. It is well established that where inconsistent guilty verdicts are returned, the defendant is entitled to a reversal of the judgment and a remand of the cause for a new trial on all counts. (*People v. Almo* (1985), 108 Ill. 2d 54, 62-63; *People v. Hoffer* (1985), 106 Ill. 2d 186, 195; *People v. Frias* (1983), 99 Ill. 2d 193, 203; *People v. Hairston* (1970), 46 Ill. 2d 348, 361.) By returning guilty verdicts for reckless conduct and attempted murder, the jury necessarily found mutually inconsistent mental states to exist when defendant shot and wounded Barbara. It is therefore of no moment whether or not the jury was instructed to consider reckless conduct as a lesser included offense of attempted murder.

The *Hoffer* rule also controls the guilty verdicts for the defendant's conduct towards Annette Keys. Keys was wounded by a single bullet: the second shot fired by the defendant. As to Keys, therefore, the analysis is precisely the same as in *Hoffer*, where there was only one shot. By its guilty verdicts, the jury here necessarily found that the defendant acted both recklessly (reckless conduct) and knowingly (armed violence predicated on aggravated battery) in firing that shot. Under *Hoffer*, we conclude that these convictions were legally inconsistent.

In what appears to be an alternative argument, the State contends that the requisite mental states for reckless conduct and armed violence based on aggravated

battery— recklessness and knowledge, respectively—are not mutually inconsistent. This argument, as the State itself concedes, is at odds with our holding in *Hoffer* that recklessness and knowledge are mutually inconsistent culpable mental states. We find no merit in the State's argument that *Hoffer* should be overruled on the ground that the mental state of knowledge "includes" the mental state of recklessness.

The State clarifies what it means by "includes" in its erroneous assertion that "a defendant who acts recklessly still acts knowingly." The fatal flaw in this argument is that it totally blurs the distinction between the mental state of knowledge and the less culpable mental state of recklessness by assuming that the two invariably coexist. A defendant acts with a reckless state of mind when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow." (Ill. Rev. Stat. 1983, ch. 38, par. 4—6.) The statutory definition of recklessness does not contemplate that a defendant be "practically certain" of the result that his conduct will cause or consciously aware of the "substantial probability" that a material fact exists as required in the statutory definition of knowledge. (Ill. Rev. Stat. 1983, ch. 38, par. 4—5.) Therefore, it does not follow, as the State has urged, that one who acts recklessly also acts knowingly.

As stated earlier, the jury submitted the following question to the trial judge during the deliberations: "Do we need to sign all five papers to the extent of guilty or not guilty, or by signing the more severe of the charges do we eliminate the need to sign the form for the lesser charge[?]" The State maintains that this question manifests a clear intent to find the defendant guilty of the greater offenses such that the verdicts should not be deemed legally inconsistent. We disagree with this contention for an even more compelling reason than the

simple fact that it is not supported by a careful reading of the question, either standing by itself or when placed in the context of two other subsequent questions which requested definitions pertaining to the armed-violence charges. Simply put, courts are not in the business of second-guessing a jury's "clear intent." Just as this court does not sit to speculate on issues not before it, nor will this court attempt to metaphysically divine a jury's collective intent from a single question that may well have only embodied the curiosity or concern of a single juror. We conclude that the only unequivocally clear manifestation of a jury's intent occurs when legally and logically final written verdicts are returned.

In response to the jury's question whether it would eliminate the need to reach a verdict on the reckless-conduct counts by finding the defendant guilty or not guilty of the greater charges, the trial judge instructed: "Sign a 'guilty' or 'not guilty' form of the verdict as to each offense charged." Obviously, the court's instruction opened the door to the inconsistent guilty verdicts ultimately rendered by the jury. The fact that the trial court accepted the inconsistent verdicts and excused the jury, rather than requiring further deliberations to resolve the inconsistency, distinguishes the present case from our recent decision in *People v. Almo* (1985), 108 Ill. 2d 54.

In *Almo*, when the jury returned inconsistent guilty verdicts for murder and involuntary manslaughter, the trial judge refused to accept and enter judgment on the verdicts. This court observed that if the trial judge had entered judgment on the verdicts, *Hoffer* would control. (108 Ill. 2d 54, 63.) Instead, the trial judge in *Almo* ordered the jury to deliberate further with new verdict forms and instructed the jury that it could not return guilty verdicts for both murder and voluntary manslaughter. We approved of the trial court's action as a sensible and practical procedure to resolve the problem

of inconsistent verdicts and to prevent entry of a judgment contrary to the true intent of the jury.

In the case at bar, the instructions on the reckless-conduct counts were tendered, at the defendant's request, to provide the jury with an alternative which would exonerate the defendant of the greater charges. As such, the trial judge had a duty to apprise the jury that it could find the defendant guilty of the lesser or greater offenses, but not both. When the jury returned with inconsistent guilty verdicts, the trial judge had a duty to send the jury back for further deliberations consistent with new instructions to resolve the inconsistency. We noted in *Almo* that a trial judge faced with inconsistent guilty verdicts may not properly enter judgment on one or more of the verdicts and vacate the others. Where inconsistent verdicts are returned, a trial judge may not usurp the function of a jury by second-guessing "which of the two verdicts was intended by the jury and which was a result of some misconception." (*People v. Almo* (1985), 108 Ill. 2d 54, 63-64.) Since the trial court here failed to take either the preventative step of instructing the jury that it could not consistently return guilty verdicts for both the greater and lesser offenses, or the remedial action approved in *Almo,* the cause must be remanded for a new trial on all counts.

Finally, defendant argues that a retrial should be barred under the principle of collateral estoppel and the constitutional prohibition against double jeopardy. We continue to adhere to the position stated in *People v. Hoffer* (1985), 106 Ill. 2d 186, 196-99, where the same contentions were considered and rejected as meritless.

For the reasons stated, the judgment of the appellate court, reversing and remanding the cause for a new trial on all counts, is affirmed.

*Judgment affirmed.*