THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY TRAYLOR, Defendant-Appellant.

Third District   No. 3—89—0608

Opinion filed August 13, 1990.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, State's Attorney, of Joliet (Michael C. Rolinski, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Defendant Larry Traylor was indicted and charged with two other men (Nobles and Robinson) with one count of unlawful delivery of a controlled substance containing cocaine in violation of sections 401(a)(2) and 401.1(a) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(a)(2), 1401.1(a)). The defendant was tried separately and, following a jury trial, was convicted and

sentenced to a 10-year term of imprisonment. The defendant appeals his conviction. We reverse the defendant's conviction and remand for a new trial.

The record reveals that the State's only occurrence witness, Roberto Flores, testified that, in conjunction with several different law enforcement agencies, he had arranged to pick up a package of cocaine from Nobles on October 13, 1988. Flores had been in contact with Nobles for months regarding a drug transaction. When Flores arrived at the designated rendezvous point, however, he was met by Robinson, who was standing outside his car. Robinson indicated to Flores to get into the back seat of Robinson's car. Flores complied, and Robinson got into the front seat on the driver's side.

When Flores entered Robinson's car, he noticed a passenger in the front passenger seat. Although Flores did not know the passenger's name, he did recognize him as someone he had seen before. At trial Flores identified the defendant as being the passenger in the car on October 13, 1988.

Robinson and Flores engaged in a brief discussion, during which Robinson indicated that Nobles had sent Robinson to meet with Flores. Robinson retrieved a package from under the driver's seat and handed it to Flores. Flores opened the package and quickly examined the contents. Flores testified that no money changed hands during the delivery. Flores further testified that the entire meeting took between 30 seconds and 1 minute.

Flores testified that the defendant said nothing during the meeting. Flores testified that the defendant was in possession of a gun and alternated between looking at Flores and Robinson and outside the automobile. Flores further testified that after receiving the package, he exited the vehicle and gave the package to the police. He also testified that he picked the defendant's photo out of a police photo array.

On cross-examination, Flores admitted that he had not been in contact with the defendant prior to the delivery. He further testified that he had failed to initially tell the police about the defendant's gun. Flores testified that he later remembered the gun while they were at the police station but could not recall which police officers he told about the gun.

Joliet police officer Donald Edgerly testified that on October 13, 1988, he was in continual contact with Flores from noon until after Flores' meeting with Robinson. Edgerly and Officer Phillip Valera met with Flores within approximately three minutes of Flores' meeting with Robinson. Flores handed a package to Valera and indicated that Robinson was the driver and that he could identify the passenger

from police photographs. Edgerly did not recall Flores mentioning that the passenger had a gun, and this information was not contained in the report Edgerly filed regarding the evening's activities.

Officer Phillip Valera testified that he and Edgerly met with Flores shortly after the delivery. He received a package from Flores that included eight individual packets of a white substance later identified as containing cocaine. Valera also testified that he had no recollection of Flores ever mentioning the passenger's possession of a gun.

The State's final witness was a forensic expert in drug chemistry who testified that her analysis of the substance received from Edgerly resulted in the conclusions that the total weight was 119.1 grams and contained cocaine.

The defendant's motion for a directed verdict was denied. Robinson then testified for the defense. He indicated that he had pleaded guilty in the case. He testified that the defendant was not the man present with him in the October 13, 1988, meeting with Flores.

During cross-examination, the State called Robinson's attention to his guilty plea proceedings. The jury was excused. The defendant made a motion to preclude the State's use of certain statements from that earlier proceeding. The defendant argued that the State would attempt to improperly impeach Robinson with portions of the transcript from his earlier guilty plea hearing in which the State's Attorney had elicited Robinson's agreement with a statement of facts which the State expected its case against Robinson could prove. This statement of facts referred to defendant Traylor being in the car when Robinson made the delivery to Flores.

The defendant argued that Robinson's prior agreement with the State's evidence against him should not be interpreted as an acknowledgement of Traylor's presence by Robinson for purposes of impeachment. The trial court denied the defendant's motion.

The State proceeded to ask Robinson if he had expressed agreement, at his guilty plea proceeding, with the fact that Traylor was present in the car during the delivery to Flores. Robinson initially denied expressing such agreement. The following exchange then took place:

"STATE'S ATTORNEY: Q. Mr. Robinson, did you or did you not agree before this judge that Larry Traylor was with you on the night of October 13, 1988?

ROBINSON: A. I pled guilty to that charge.

STATE'S ATTORNEY: Your Honor, would you please instruct the witness to answer the question?

THE COURT: Will you answer the question yes or no, sir?

ROBINSON: Yes.

STATE'S ATTORNEY: Q. You did agree that Larry Traylor was there that night?

ROBINSON: A. Oh, man.

DEFENSE COUNSEL: Your Honor, I'm going to—.

THE COURT: The question's been asked and answered."

The State's Attorney then read the literal words spoken from the transcript and asked Robinson if he recalled the statement that included an implication of Traylor. Robinson testified that he did not notice Traylor's name being mentioned therein at the time. Robinson then responded, however, that he had answered affirmatively to a question from the court on January 30, 1989, asking whether he agreed that evidence in a trial against him would be substantially as was stated by the State's Attorney beforehand.

On redirect, Robinson testified that he wasn't paying attention to the part about the other person being present. Defense counsel then attempted to question Robinson about statements he made during his arrest. The State's objection to this was sustained. The court held that no prior statements made by Robinson, either before or after his guilty plea hearing, were admissible for rehabilitation purposes.

The defendant was the final witness in the trial. He denied being present at the meeting between Robinson and Flores.

Over defendant's objection, the court determined that the standard Illinois Pattern Jury Instruction concerning a witness' prior inconsistent statement should be given.

Following jury deliberations, the defendant was convicted and a 10-year prison term was imposed. The defendant appeals.

The defendant raises two issues on appeal. Initially, the defendant argues that he was not proven guilty beyond a reasonable doubt. The defendant maintains that while the State's evidence may have shown him to be at the scene, it failed to demonstrate that he either knew that a crime was taking place or that he aided or abetted the crime.

Flores testified that the defendant was looking at him and Robinson, as well as outside the automobile. Flores also testified that the defendant had a gun. The clear implication is that the defendant was not merely present but served the function of serving as a lookout/armed guard. If this was true, then the defendant certainly could be convicted under an accountability theory. *People v. Jones* (1980), 86 Ill. App. 3d 278, 282, 407 N.E.2d 1121, citing *People v. Krouse* (1975), 30 Ill. App. 3d 446, 333 N.E.2d 17.

While it is true that the two officers did not recall Flores telling them about the gun and Flores himself could not remember which

officer he had told about the gun, this was brought up for the jury to consider. Any inconsistencies in the testimony of the witnesses, any bias or interest affecting the credibility of the witnesses and the weight to be given to the testimony are for the trier of fact to determine since the trier of fact is in a better position to observe the witnesses and to weigh discrepancies in their testimony. *People v. Kirwan* (1981), 96 Ill. App. 3d 121, 124, 421 N.E.2d 317, citing *People v. Henderson* (1976), 39 Ill. App. 3d 502, 348 N.E.2d 854.

■ In the instant case, the jury chose to believe Flores. We are of the opinion that there was sufficient evidence for the jury to conclude that the defendant was present at the scene and participated as a lookout/armed guard.

■ While we have concluded that there exists sufficient evidence to support the jury's verdict, the defendant has raised a second issue contending that the trial court erred in admitting the statement from Robinson's guilty plea hearing. We agree.

The defendant cites *People v. Henderson* (1981), 95 Ill. App. 3d 291, 419 N.E.2d 1262. In *Henderson*, the defendant, together with Ricky Hurt, was charged with the theft of a snowblower from a hardware store. At Henderson's trial, the State presented an entirely circumstantial case. Hurt, previously convicted pursuant to a guilty plea, testified on Henderson's behalf. He testified that Henderson was not his passenger on the day he was caught fleeing the hardware store with the stolen goods. No other witnesses were able to identify Henderson as having been Hurt's accomplice that day. In an effort to impeach Hurt on the issue of the identity of the passenger seen fleeing the car just prior to Hurt's arrest, the State questioned Hurt regarding portions of his guilty plea proceedings. The State focused on a factual basis statement pertaining to Hurt's guilt, which had been made in Hurt's presence prior to his plea. The statement contained a reference to the defendant (Henderson) having been a passenger in the car. The witness (Hurt) denied any acknowledgement of, or agreement with, the portion of the guilty plea statement of facts which inculpated the defendant.

This court, in reversing Henderson's theft conviction, held that this method of cross-examination improperly introduced matters of a substantially prejudicial nature into the defendant's trial. *Henderson*, 95 Ill. App. 3d at 296-97.

*Henderson* controls the introduction of Robinson's guilty plea statement into these proceedings. The State urges this court to overrule *Henderson* or, in the alternative, hold the error to be harmless.

We reject the State's argument to reverse *Henderson*. As to the

"harmless error" argument, without the statement, there is no evidence rebutting Robinson's testimony. Accordingly, it is a question as to who is the more credible witness—Flores or Robinson. Accordingly, we fail to see how the inclusion of this evidence could be considered harmless.

We reverse the defendant's conviction and remand to the trial court for a new trial.

The decision of the circuit court of Will County is reversed and remanded.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.