THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARSHALL MITCHELL III, Defendant-Appellant.

Second District No. 2—91—0206

Opinion filed December 18, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

A Kane County jury found defendant, Marshall Mitchell III, guilty of attempt (murder) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a)), unlawful possession of a weapon by a felon (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a)), aggravated assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—2(a)(13)), mob action (Ill. Rev. Stat. 1989, ch. 38, par. 25—1(c)), and reckless conduct (Ill. Rev. Stat. 1989, ch. 38, par. 12—5(a)). Judgment was entered on the attempt (murder) and unlawful possession of a weapon by a felon counts.

Defendant raises four issues on appeal. First, he claims that the State did not adequately prove specific intent, as is needed to convict for attempt (murder). Second, he alleges that his attempt (murder) conviction cannot stand because the guilty verdicts of the jury on that charge and the reckless conduct charge are legally inconsistent. Third, he complains of the trial court's allowing the State to impeach his cousin with statements made at the hearing on his cousin's plea of guilty to a weapons charge arising out of the same incident sparking this prosecution. Finally, he alleges that his trial counsel was ineffective for not making an offer of proof as to the bias, interest or motive to testify falsely that would have been shown had counsel been allowed to ask the State's occurrence witnesses whether and when they filed formal complaints about the shooting.

FACTS

Late in the afternoon on May 3, 1990, defendant and his cousin, Keith Starks, were involved in a street fight with several others in the area of a house on Fremont Street in Elgin, Illinois. Billy Mitchell, the attempt (murder) target, took part in the altercation, during which defendant was hit over the head with a metal folding chair by an unknown assailant, necessitating his removal to a hospital by ambulance.

Later that same evening, Starks was seen walking down Fremont Street, carrying a gun and muttering threats. He met up with defendant and gave defendant the gun. Defendant then yelled a death threat and opened fire in the direction of persons standing in front of the house on Fremont Street. One bullet passed through the house, nar-

rowly missing an infant, while the remaining bullets hit a pickup truck which was parked in the driveway of the house and behind which Billy Mitchell took refuge when the shooting started. So ended the episode giving rise to the charges against defendant. More specific facts will be supplied where called for in the analysis.

### INCONSISTENT VERDICTS

We address first defendant's claim that the jury's verdict finding him guilty of attempt (murder) is legally inconsistent with its verdict finding him guilty of reckless conduct. We agree. Initially, we note that the issue is not waived despite defendant's failure to raise it in his post-trial motion. Legally inconsistent verdicts present plain error, which is an exception to the general rule that issues not raised in defendant's motion for a new trial are waived. *People v. Randle* (1991), 213 Ill. App. 3d 1082, 1084; 134 Ill. 2d R. 615(a).

The reckless conduct count of the indictment alleged that defendant "endangered the bodily safety of Bess M. Scott and child and Billy Mitchell, in that he, while acting in a reckless manner, discharged a handgun in the area of [the house on Fremont Street], bullets striking a pickup truck and entering [the house on Fremont Street], thereby endangering the bodily safety of Bess M. Scott and child and Billy Mitchell."

Similarly, the jury instructions on reckless conduct required the jury to convict defendant of reckless conduct if it found that the State proved that he "recklessly performed an act which endangered the bodily safety of Bessie Smith [the same person as Bess M. Scott], her child and Billy Mitchell."

The attempt (murder) count of the indictment charged that defendant, "with intent to kill Billy Mitchell *** shot at Billy Mitchell with a gun." The attempt (murder) jury instructions asked the jury to consider whether defendant "performed an act which constituted a substantial step toward the commission of the offense of Murder *** and *** did so with intent to commit the offense of Murder." The instructions elsewhere defined that intent as the intent to kill.

The State attempts to reconcile the jury's guilty verdicts by claiming on appeal that the jury could have found that the first shot fired by defendant, the shot that entered Bessie Scott's home, constituted reckless conduct, while the remaining shots, those which hit the truck behind which Billy Mitchell was hiding, constituted attempt (murder). That argument is not persuasive, given the wording of the indictment and the proof at trial. As it stands, the Illinois Supreme Court's deci-

sion in *People v. Spears* (1986), 112 Ill. 2d 396, is dispositive of this issue.

In *Spears*, the defendant was found guilty of attempting to murder his wife, armed violence towards his wife, and reckless conduct toward his wife, all based on the same two gunshots. The supreme court affirmed the appellate court's order of a new trial on all counts, determining that the jury impermissibly found that the defendant acted recklessly, intentionally and knowingly at the same time. *Spears* states, "where a claim of inconsistent guilty verdicts involves multiple shots or victims, the question is whether the trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent." (112 Ill. 2d at 405.) *Spears* also advises courts considering the question to give special weight to the "substance of the allegations charging the defendant" and "what the evidence showed in relation to those charges." 112 Ill. 2d at 405.

As mentioned above, the reckless conduct count of the indictment encompasses Ms. Scott, her child, and Billy Mitchell and also encompasses all the shots fired by defendant. Thus, even assuming that the first shot into the house was separate from the volley of shots fired into the truck, the jury, in order to have found defendant guilty of both attempt (murder) and reckless conduct, must have found that he acted both recklessly and with the specific intent to kill Billy Mitchell when he fired the shots that hit the truck. Such a finding is impermissible since the two states of mind are mutually exclusive. *Spears*, 112 Ill. 2d at 407.

Moreover, neither the State's proof at trial nor the jury instructions distinguished between defendant's intent when he fired the shot that entered the house and his intent when he fired the remaining shots into the truck. Although in defendant's statement to police he stated that he fired the first shot into the air and the remaining shots toward the house, very little was made at trial of any break in the sequence of shots. There was certainly nothing to alert the jury that the State or the defense was claiming different mental states as to different shots.

As the case at bar was presented, the jury could not have rationally found separable acts accompanied by different mental states to support both the attempt (murder) and reckless conduct verdicts as legally consistent. In addition, "[i]t would be manifestly unfair to allow the State, with the benefit of hindsight, to be able to create separable acts on appeal, neither alleged nor proved at trial." (*Spears*, 112 Ill. 2d at 405.) The State's argument fails.

■ Accordingly, defendant is entitled to reversal of at least his attempt (murder) conviction. The question remains, however, as to the proper course for the weapons charge. *Spears* states that a defendant convicted pursuant to inconsistent verdicts is entitled to a new trial "on all counts" (112 Ill. 2d at 407). The issue is whether the phrase "on all counts" means on all inconsistent counts or counts related thereto, or on all counts of which defendant was convicted. We believe it is the former.

In *Spears*, all of the defendant's convictions were reversed for a new trial, but each guilty verdict was inconsistent with every other guilty verdict with regard to the same victim. (112 Ill. 2d at 403-07.) Spears' convictions of attempt (murder), one count of armed violence, and one count of reckless conduct all pertained to the same actions directed at his wife and were all inconsistent. His convictions on the second armed violence and reckless conduct counts were based on actions he took against his wife's friend and were also inconsistent. There were no other convictions.

Likewise, in *People v. Hoffer* (1985), 106 Ill. 2d 186, the defendant's murder, voluntary manslaughter and involuntary manslaughter convictions were all inconsistent, requiring a new trial. The defendant was not convicted of any other crimes.

In the present case, defendant's conviction of unlawful possession of a weapon by a felon is not inconsistent with his conviction of attempt (murder) or any of the guilty verdicts on the other charges against him. Thus, his conviction of unlawful possession of a weapon by a felon will stand. We find support for our conclusion in *People v. Chambers* (1991), 219 Ill. App. 3d 470. In *Chambers*, the defendant was convicted of the armed robbery of a woman outside a currency exchange and the attempt (murder) of a passerby who came to the woman's aid. The jury also found the defendant guilty of reckless conduct as to the passerby. The inconsistency of the attempt (murder) and the reckless conduct convictions required reversal as to the offenses committed against the passerby, but not as to the armed robbery conviction for the acts against the woman. *Chambers*, 219 Ill. App. 3d at 475.

Pursuant to *Spears*, any new trial may encompass both the attempt (murder) and the reckless conduct charges. The fact that judgment was not entered on the reckless conduct guilty verdict does not prevent retrial on that charge. In *Spears*, the new trial ordered was to include each charge for which an inconsistent verdict had been returned, regardless of whether judgment had been entered on that charge. *Spears*, 112 Ill. 2d at 410.

## SPECIFIC INTENT

Defendant next challenges the sufficiency of the evidence of specific intent to kill, which the jury was required to have found to convict him of attempt (murder). (*People v. Mitchell* (1991), 209 Ill. App. 3d 562, 569.) We need to address this claim to avoid a double jeopardy problem. If there was insufficient evidence of specific intent to support the attempt (murder) conviction, then retrial on that charge would violate double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 309; *People v. O'Neil* (1990), 194 Ill. App. 3d 79, 96.

The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the State as the verdict winner, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237.

Absent an admission of intent, intent is most often proved by circumstantial evidence. (*People v. Starks* (1989), 190 Ill. App. 3d 503.) Circumstances from which an intent to kill may be inferred include the character of an assault and the use of a deadly weapon. Notably, the act of firing a gun at someone supports the conclusion that the person shooting the gun acted with intent to kill the other person. *Mitchell*, 209 Ill. App. 3d at 569.

■ In the present case, defendant testified that he was not the shooter, and was not even at the crime scene at the time of the shooting. However, defendant had given a taped statement to police wherein he admitted firing the gun at the time and place in question, but denied that anyone was in the vicinity. He stated that he had merely wanted to scare the people responsible for the beating he had received earlier that day.

Steve Binion, who lived in the house that the first bullet passed through, testified that defendant told Billy Mitchell "you're dead" and fired a gun at Billy Mitchell. Richard Whaley testified that he was standing across the street from the house on Fremont Street at the time of the shooting and that defendant was the shooter. Billy Mitchell, who hid behind the pickup truck when the shooting started, testified that defendant said "Billy, you bitches are dead," immediately before he opened fire at him.

The question of whether defendant possessed the intent to kill Billy Mitchell when he fired the gun was for the jury to decide. (*Starks*, 190 Ill. App. 3d at 510.) Likewise, the jury was to determine questions of witness credibility. (*People v. King* (1989), 190 Ill. App. 3d 1.) A rational jury could find from the evidence that when defend-

ant fired the gun at Billy Mitchell after making a death threat, he acted with the specific intent to kill. (See *People v. Athey* (1976), 43 Ill. App. 3d 261.) Defendant's contentions amounting to a claim that had he actually intended to kill Billy Mitchell, he would have gone about it in a more intelligent and strategic way, are based on mere speculation and do not merit discussion.

### IMPEACHMENT

Next, defendant claims that the State should not have been allowed to impeach Keith Starks with statements he had agreed were the truth at the hearing on his plea of guilty to a charge of unlawful possession of a weapon by a felon. Starks' weapons charge arose out of the same incident forming the basis for the charges in this case. Starks had agreed at his guilty plea hearing that it was true that he had given defendant a gun and that defendant had then begun firing towards Billy Mitchell and the house on Fremont Street.

At defendant's trial, the State called Keith Starks during its case in chief. Starks claimed he could not remember the shooting and was subsequently declared a hostile witness. (134 Ill. 2d R. 238(b).) The prosecutor then sought to get Starks to admit that he had answered "yes" to the prosecutor's question, at Starks' guilty plea hearing, that it was the truth that defendant had shot at Billy Mitchell. The prosecutor had specifically asked Starks at the hearing whether the outlined facts were true, not whether the State would offer evidence of those facts at any trial. The prosecutor had also sought Starks' agreement at the hearing that the facts concerning defendant's actions were not part of Starks' guilty plea.

Defendant alleges that the State's impeachment efforts violate the rule of *People v. Henderson* (1981), 95 Ill. App. 3d 291, and *People v. Traylor* (1990), 201 Ill. App. 3d 86, that a guilty plea does not constitute an admission of facts alleged in an indictment if those facts are not ingredients of the crime charged. In *Henderson*, a witness at the defendant's trial, who had pled guilty to charges arising out of the same events serving as the basis for the defendant's prosecution, testified that the defendant was not the person who had run from the witness' car when the witness was arrested. The State was then allowed to impeach the witness with the fact that he did not object at his guilty plea hearing to a statement that a police officer would testify at trial that the defendant was the person who ran from the witness' car. The appellate court found that allowing the impeachment was reversible error. (*Henderson*, 95 Ill. App. 3d at 294-97.) The court held that the witness' guilty plea did not "embrac[e] the collateral

matter of his passenger's identity" and that there was no implied admission by the witness concerning the passenger's identity. (*Henderson*, 95 Ill. App. 3d at 296.) The court found the evidence prejudicial since it implied that the witness had previously inculpated Henderson. *Henderson*, 95 Ill. App. 3d at 297.

Similarly, in *Traylor*, a witness who had pled guilty to drug charges arising out of a transaction for which the defendant was being prosecuted testified at the defendant's trial that the defendant was not present at the transaction. On cross-examination, he admitted that he had agreed at his guilty plea hearing that the State's evidence would be that the defendant was present at the transaction. (*Traylor*, 201 Ill. App. 3d at 88-89.) The court found that *Henderson* controlled, and it reversed the defendant's conviction. *Traylor*, 201 Ill. App. 3d at 90-91.

■ Defendant here claims that the prosecutor's getting Starks to agree that defendant's firing the gun was "the truth," rather than just what the State's evidence would be at trial, and the prosecutor's seeking Starks' agreement that "the truth" about defendant's actions constituted no part of Starks' plea, was an impermissible attempt to skirt the rule in *Henderson*. We find that we need not address the issue of whether the prosecutor improperly sought to avoid the rule since any error in allowing the impeachment was harmless.

Evidentiary errors can be deemed harmless if the strength of the properly admitted evidence is such that no fair-minded jury could reasonably have voted to acquit the defendant. (*People v. Foster* (1987), 119 Ill. 2d 69, 89.) An error does not warrant reversal if it does not appear that the finding of guilt resulted from it or that justice has been denied. (*People v. Richardson* (1988), 123 Ill. 2d 322, 344.) Moreover, "[t]he determination of harmless error must be analyzed on the particular facts of each case, considering the trial record as a whole." *People v. Redd* (1990), 135 Ill. 2d 252, 318.

In *Henderson*, the State's case against the defendant was entirely circumstantial. The impeachment testimony was the only testimony, although not the only evidence, implying that the defendant was the person who fled from the witness' car at the time of the witness' arrest. (*Henderson*, 95 Ill. App. 3d at 293.) Likewise, in *Traylor*, the case came down to a battle of credibility between the witness who claimed that the defendant was not at the transaction, and who was subsequently impeached, and another witness who testified that the defendant was present at the transaction. *Traylor*, 201 Ill. App. 3d at 90-91.

In the case at bar, Starks was impeached with evidence showing that defendant was the shooter and fired at Billy Mitchell. The evidence elicited from Starks was merely cumulative of testimony given by Steve Binion, Richard Whaley and Billy Mitchell. Defendant himself told police that he fired the gun in the vicinity of the house on Fremont Street. We have previously determined that evidence is sufficient to support the specific intent element of defendant's attempt (murder) conviction, the only element about which he complains of insufficient evidence. Given the cumulative nature of the evidence supplied by Starks, any error was harmless. See *People v. Montague* (1986), 149 Ill. App. 3d 332, 346.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant contends that he was denied the effective assistance of counsel guaranteed him by the sixth amendment to the United States Constitution. At trial, defense counsel was prevented from questioning several of the State's witnesses about whether, and when, they filed formal complaints about the shooting. The court ruled that such questions were beyond the scope of direct examination. Defendant claims on appeal that those witnesses were pressured by police into cooperating with the prosecution, that defense counsel's questions would have shown interest, bias or motive to testify falsely resulting from that pressure, and that defense counsel's failure to make an offer of proof concerning that alleged bias evidence constitutes ineffective assistance of counsel.

When determining whether a criminal defendant has been denied the effective assistance of counsel, the court must decide whether counsel's performance fell below an objective standard of reasonableness, and whether the defendant was prejudiced thereby. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504.) A court may pretermit discussion of the first prong if no prejudice has been shown by the defendant. (*People v. Johnson* (1989), 128 Ill. 2d 253, 271.) The State urges us to follow this route.

Defendant's exact claim could be more clearly stated. From reading his brief it seems that defendant is claiming both that evidence exists that Bessie Scott, Richard Whaley and Billy Mitchell testified falsely at the insistence of the police and that such an inference could have been made by the jury if those witnesses had been questioned regarding the timing of their complaints to the police.

If evidence of police-suborned perjury exists, defendant did not even attempt to present it to the court. Moreover, defense counsel did

not ever state such a charge to the trial judge at the hearing on defendant's motion for a new trial, despite a discussion between the two regarding the impeachment issue. Defense counsel merely said that the fact that Bessie Scott testified for the State after having stated that she would not file a complaint "might" show bias or interest. Defense counsel also said that "pressure was brought to make [the witnesses] come forth."

We realize that it is defendant's claim that his trial counsel's ineffectiveness is the very reason the evidence was never brought to the trial court's attention. However, defendant's mere unsubstantiated claim on appeal is insufficient for us to reverse. If evidence of perjury exists, defendant should bring it forward.

If defendant's argument hinges on a claim that the jury could have inferred bias from evidence that the State's occurrence witnesses were pressured by the police to cooperate with the prosecution and that he was unconstitutionally denied the chance to have that inference made, then he still does not prevail. In order to show that he was prejudiced by his trial counsel's failure to make the offer of proof, defendant has to show that the bias evidence should have been admitted and that there is a reasonable probability that its admission would have changed the result of his trial. (See *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) The offer of proof issue does not come into play unless it is determined that the evidence was improperly excluded.

We will therefore assume *arguendo* that Bessie Scott, Richard Whaley and Billy Mitchell would have testified that the police pressured them into filing complaints and pursuing the prosecution of defendant. We will not assume that the police asked them to testify falsely.

■ We believe that testimony by Scott, Whaley and Mitchell that the police pressured them into cooperating with the prosecution would not necessarily give rise to the conclusion that they were biased in favor of the State or prejudiced against defendant, much less that they lied for the State. There are many reasons why a witness may not wish to cooperate in a criminal prosecution, and why a victim may not wish to press charges against a perpetrator. In light of the fact that no one was injured in the shooting, Scott, Whaley and Mitchell may have merely wanted to forget about the whole event rather than prolong it and risk further confrontations with defendant or others.

Although the trial court has no discretion to deny a defendant his right to cross-examine to show bias, interest or motive to testify falsely, impeachment evidence cannot be too remote or uncertain.

(*People v. Triplett* (1985), 108 Ill. 2d 463, 475-76.) Here, we believe that evidence that the police pressured the State's occurrence witnesses into cooperating in the prosecution, without more, does not show interest, bias or motive to testify falsely. Even if the evidence arguably should have been admitted, defendant has not shown prejudice under the *Strickland* test. There is simply too great a leap of logic between evidence that the police have pressured a witness to testify and the conclusion that the witness is biased in favor of or is lying for the State. Absent a showing of prejudice, defendant has not shown ineffective assistance of counsel.

For the reasons stated, we affirm defendant's conviction of unlawful possession of a weapon by a felon, reverse his conviction of attempt (murder), and remand for a new trial on the attempt (murder) and reckless conduct counts.

Affirmed in part; reversed in part and remanded.

UNVERZAGT and DOYLE, JJ., concur.