(No. 81902.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID FORNEAR, Appellant.

*Opinion filed May 22, 1997.*

G. Joseph Weller, Deputy Defender, and Barbara R.

Paschen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and John D. Tourtelot, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, David Fornear, was charged by indictment in the circuit court of Lake County with aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1992)), aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 1992)), unlawful use of weapons by a felon (720 ILCS 5/24—1.1 (West 1992)), and unlawful use of weapons (720 ILCS 5/24—1(a)(7) (West 1992)) in connection with the shooting of his fiancee, Michelle Wilkinson. The unlawful use of weapons by a felon charge was severed for trial, and a jury returned verdicts of guilty of aggravated discharge of a firearm, unlawful use of a weapon, and an uncharged count of reckless conduct (720 ILCS 5/12—5 (West 1992)), which, at defendant's request, the jury was instructed to consider as a lesser-included offense of the aggravated battery count. He was acquitted of the aggravated battery with a firearm charge.

The trial court sentenced defendant to a 13-year term of imprisonment for aggravated discharge of a firearm and a concurrent 5-year term for unlawful use of weapons. The reckless conduct charge was not addressed by the sentencing court. The State's motion to nol-pros the unlawful use of weapons by a felon charge was granted. The appellate court, with one justice dissenting, affirmed. 283 Ill. App. 3d 171. We allowed defendant's petition for leave to appeal (155 Ill. 2d R.

315), which raises, as its sole issue, whether the jury's verdicts of guilty of aggravated discharge of a firearm and reckless conduct are legally inconsistent.

The State adduced the following evidence at trial. It was stipulated that, if called to testify, Colleen Kay would state that she is employed as a dispatcher by the Wauconda police and fire departments. At approximately 12:13 a.m. on November 15, 1993, Kay was on duty when she received a 911 call from a man requesting rescue services for a person who had been shot. Kay would further state that all incoming 911 calls are recorded on the dictaphone tape recorder at her work station, and that State's exhibit No. 2 is a true and accurate recording of the entire telephone conversation that took place at that date and time. State's exhibit No. 2 was played for the jury in open court and admitted into evidence. On the recording, the following colloquy, *inter alia*, is heard:

"KAY: 911, what is your emergency?
CALLER: My girlfriend was shot.
KAY: Your girlfriend was shot?
CALLER: Yeah, I think she was.
KAY: Where is she?
CALLER: 27358 Route 176. I'm at a pay phone [be]cause we don't have a phone at home.

* * *

KAY: How do you know she got shot?
CALLER: She was mad at me and she was gonna shoot me and the gun went off and I looked at her chest and there's a little bullet thing.
KAY: Is she conscious?
CALLER: Yeah, but she's scared she's dying or something. Somebody's gotta get there.

* * *

KAY: What kind of a gun was it?
CALLER: A 22.
KAY: Okay.

CALLER: Okay. I gotta get back there. Send them right away please."

Blake Wilkinson, the nine-year-old son of Michelle Wilkinson, testified that in November 1993, he and his younger sister lived with their mother and defendant in Wauconda. On the night of the shooting, Blake was awakened, went into his mother's room and found defendant crying and saying: "Don't do this to me." Blake saw his mother lying on the bed looking up at the ceiling with her mouth open and her skin "all white." Blake identified State's exhibits Nos. 18 and 19 as photographs of a shotgun belonging to defendant.

Officer David Walz, of the Island Lake police department, testified that about midnight on November 15, 1993, he monitored an emergency call to the Wauconda fire department requesting that an ambulance be sent to a house on Route 176 in Wauconda Township. When Walz arrived, he saw a black pickup truck in the driveway with its hazard lights flashing. Walz stated that he saw a man, later identified as defendant, walking toward the ambulance and waving his arms. Walz intercepted defendant, who was yelling to the ambulance crew to get into the house to help his fiancee who had accidentally been shot. Walz asked defendant where the gun was located, and defendant told him that the gun was in the bedroom with his fiancee. Walz testified that he then handcuffed defendant and walked him toward the squad car of Lake County Sheriff's Deputy Byrne, which had just arrived. Walz bent defendant over the trunk of the squad car to search him for weapons and, finding none, locked defendant in the back seat.

Mark Abernathy, a Wauconda fire fighter and paramedic, testified that he was in charge of the ambulance crew that answered the emergency call. The crew encountered a woman in the bedroom of the house who was lying on the bed with her legs crossed "Indian style." The woman was in distress, and in answer to

their questions, told them that she had been shot twice. Abernathy stated that his crew examined the woman and found a single entry wound in her right shoulder, near the collarbone.

Dr. Stephen Rivard, an emergency physician at Good Shephard Hospital, testified that on November 15, 1993, he treated Michelle Wilkinson for a gunshot wound. Rivard observed that Wilkinson had a puncture wound at the base of her neck and was paralyzed. A chest X ray revealed a metal fragment lodged in Wilkinson's left lung and bone fragments "around the middle of the thoracic spine area." Rivard opined that the bullet had entered either from above Wilkinson or in front of her, if she had been bending forward, and that the shot had come from a distance greater than two or three feet. Blood tests showed that Wilkinson's blood-alcohol content was "170 milligrams," and that she had consumed cocaine and amphetamines.

Detective Scott Robin, an evidence technician with the Lake County sheriff's department, testified that he arrived at the site of the shooting at approximately 1:30 a.m. on November 15, 1993. Robin stated that, while searching the bedroom of the residence for evidence, he found a .22-caliber semiautomatic pistol lying on the floor. A live round was "chambered in the weapon," and a magazine for a pistol was located several inches away. Robin testified that he discovered two live .22-caliber rounds on the floor in the same area as the weapon, and two spent .22-caliber shell casings, one near the corner of the room on the floor, and a second on top of a quilt at the foot of the bed. A 16-gauge bolt-action shotgun was also found in the bedroom.

Robin further testified that he discovered what he believed was a bullet hole above the head of the bed where Wilkinson was found. The hole was 6 feet, 1$^1$/$_2$ inches above floor level, and the interior diameter of the

hole was approximately 0.23 of an inch, consistent with a .22-caliber bullet hole. Robin was unable to retrieve a bullet from the interior wall behind the hole. Robin stated that although there were additional holes in the bedroom walls, including nail and BB holes, none were consistent with a bullet hole. On cross-examination, Robin conceded that he could not conclusively state that the hole above the bed was a bullet hole, nor could he determine when the hole had been made.

Robert Wilson, a firearm and tool mark examiner with the Northern Illinois Police Crime Laboratory, identified the pistol taken from the scene as a "Ruger standard Mark One" .22-caliber semiautomatic pistol. Wilson testified that the pistol had one mode of firing, a single action, which means that the trigger must be pulled each time for the weapon to fire. Wilson stated that tests indicated the two spent cartridge casings found on the bedroom floor were fired by the Ruger pistol. Wilson described a magazine as "a portion of the firearm that is filled with live rounds and inserted into the firearm," and identified the magazine found near the pistol as a "Ruger standard magazine" which fits that firearm. Wilson further stated that, after a bullet is fired from this pistol, its spent cartridge is ejected up and to the right.

Wilson also testified that he had examined the shotgun taken from the bedroom and described it as a J.C. Higgins 16-gauge bolt-action shotgun in working order. Wilson stated that the shotgun's barrel and stock had been shortened after it left the factory and that its overall length was $26^{1}/2$ inches, with the barrel measuring 15 inches. On cross-examination, Wilson testified that the Ruger pistol had a "light trigger pull," and admitted that if the last time the weapon was fired it was laid to rest with a live round in the chamber and the safety in the off position, it could be fired by pulling the trigger without having to pull the bolt back.

Deputy John Byrne, of the Lake County sheriff's department, testified that he spoke to defendant while he was locked in Byrne's squad car at the scene. Defendant was crying and told Byrne that he was fighting with his fiancee when "the gun fell off the bed, and went off."

Deputy Robert Randall, of the Lake County sheriff's department, testified that after placing defendant under arrest, he drove defendant from the Wauconda police station to the sheriff's office in Waukegan. During the trip, defendant repeatedly stated that it was ridiculous that he was being charged with shooting his girlfriend, because he had not even been in the room at the time. The defense rested without presenting evidence.

The appellate court majority affirmed defendant's convictions, stating: "Our examination of the elements of the offenses of reckless conduct and aggravated discharge of a firearm leads to the conclusion that, under the facts of this case, the requisite mental states for these offenses are legally compatible." 283 Ill. App. 3d at 177. Before this court, defendant argues that the appellate court's finding that the mental states of knowledge and recklessness were not legally inconsistent is in direct conflict with this court's opinion in *People v. Spears*, 112 Ill. 2d 396 (1986). We agree with defendant, and with the appellate court dissent (283 Ill. App. 3d at 181 (Rathje, J., dissenting)), that *Spears* is dispositive.

In *Spears*, the evidence presented at trial established that the defendant fired three shots in rapid succession: one bullet struck his estranged wife, one hit both her and another woman, and the third caused no injury. The jury returned guilty verdicts as to the charged offenses of attempted murder and two counts of armed violence (based on the great-bodily-harm form of aggravated battery), and also found the defendant guilty on two uncharged counts of reckless conduct, which

were considered at his request. In affirming the appellate court's order of a new trial on all counts, this court held the verdicts represented a legally inconsistent finding that the defendant acted intentionally, knowingly and recklessly when he performed the same acts.

In the instant case, the appellate court, while acknowledging *Spears*, reasoned as follows:

> "[A]n offender who endangers another by reckless conduct intentionally or knowingly performs the endangering acts, such as discharging a firearm. \*\*\*
>
> \*\*\* The offense of aggravated discharge of a firearm required only that the jury find that defendant knowingly or intentionally performed the act of firing the pistol in the direction of the victim. Assuming the jurors also found that defendant intentionally fired the weapon with a conscious disregard for whether his actions would endanger or injure the victim, they could have concluded properly that defendant was guilty of both aggravated discharge of a firearm and reckless conduct." 283 Ill. App. 3d at 179.

However, the argument that the mental states involved herein are not mutually inconsistent, because the mental state of knowledge "includes" the mental state of recklessness, was raised and rejected in *Spears*. *Spears*, 112 Ill. 2d at 407-08. As the *Spears* court explained: "The fatal flaw in this argument is that it totally blurs the distinction between the mental state of knowledge and the less culpable mental state of recklessness by assuming that the two invariably coexist." *Spears*, 112 Ill. 2d at 408. We continue to adhere to the holding of *Spears*, and its predecessor, *People v. Hoffer*, 106 Ill. 2d 186 (1985), that recklessness and knowledge are mutually inconsistent culpable mental states.

The *Spears* court additionally provided the "essential framework for analyzing the consistency of jury verdicts in the troublesome context of multiple shots or victims," stating:

> "[W]here a claim of inconsistent guilty verdicts involves multiple shots or victims, the question is whether the

trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent. \*\*\*

\*\*\* We believe that the substance of the allegations charging the defendant, as an unequivocal expression of prosecutorial intent [citation], and what the evidence showed in relation to those charges, are of particular importance in determining whether guilty verdicts could rationally and consistently be based upon separable acts accompanied by the requisite mental states." *Spears*, 112 Ill. 2d at 405-06.

In the instant case, count I of the indictment stated in pertinent part: "[D]efendant \*\*\* committed the offense of aggravated battery with a firearm, in that [he] in committing a battery \*\*\* knowingly without legal justification caused an injury to Michelle Wilkinson by means of the discharging of a firearm in that said defendant shot Michelle Wilkinson in the chest." Count II of the indictment charged in pertinent part: "[D]efendant \*\*\* committed the offense of aggravated discharge of a firearm, in that [he] knowingly discharged a firearm \*\*\* in the direction of Michelle Wilkinson." According to the jury instructions, proof of the charge of aggravated discharge of a firearm depended on a finding that defendant knowingly discharged a firearm in the direction of another person. The aggravated battery with a firearm charge would be proved if the jury found that defendant knowingly caused injury to another by discharging a firearm, and the reckless conduct charge would be proved by a finding that defendant recklessly performed an act that caused bodily harm to another. The jury also received an instruction that it might render a guilty verdict as to aggravated battery or reckless conduct, but not both.

In its brief, the State argues that the jury herein correctly found two separate acts accompanied by separate mental states:

"The first act was the defendant's [knowingly] discharg-

ing a firearm in the direction of the victim as indicated by the bullet hole found six and one half feet above the bed: a 'warning shot' if you will. The second act was the defendant then firing the gun directly at the victim, striking her in the shoulder area. \*\*\* [T]he jurors felt that the defendant, by firing the gun directly at the [victim], did so recklessly and caused bodily harm in so doing."

It is true that here, unlike *Spears*, the indictment charging defendant and the issues instructions given the jury appear to charge a separate offense for each action or shot fired by defendant. However, as in *Spears*, even assuming *arguendo* that defendant's acts were separable, "the record belies any suggestion that the defendant's mental state changed during the shootings to support the State's hypothesis." *Spears*, 112 Ill. 2d at 406. Because neither the victim nor the defendant testified at trial, there was no direct evidence of the shooting. Nor was any evidence presented to suggest that defendant's state of mind varied during the gunfire, as the State now posits. Indeed, as the appellate court dissent noted, the State's closing argument reflected its theory that defendant had acted either knowingly or intentionally in firing both shots. 283 Ill. App. 3d at 182 (Rathje, J., dissenting).

Disputing defendant's theory of accident, the State argued in closing that to shoot the .22-caliber pistol, one must deliberately pull the trigger, and that "[i]t is not an accident when a gun is fired two times." The State also argued that the two shots occurred in rapid succession and that defendant's conduct was intentional, stating: "What [defendant] intended to do is what happened. [Defendant] intended to shoot at her; and basically what the facts show in this case is after the first shot, Michelle Wilkinson ducked, and [defendant] moved up and he shot her." Yet the jury, by its guilty verdicts, found that defendant acted recklessly (reckless conduct) and knowingly (aggravated discharge of a firearm).

Thus, the State here, as in *Spears*, is "attempting to justify guilty verdicts in direct conflict with both its theory of the case at trial and the evidence it presented in support of that theory." *Spears*, 112 Ill. 2d at 405. We respond, as in *Spears*, that "[i]t would be manifestly unfair to allow the State, with the benefit of hindsight, to be able to create separable acts on appeal, neither alleged nor proved at trial." *Spears*, 112 Ill. 2d at 405. Where neither the State's proof at trial nor the jury instructions distinguished between defendant's intent when he fired the shots, there was "nothing to alert the jury that the State or the defense was claiming different mental states as to different shots." See *People v. Mitchell*, 238 Ill. App. 3d 1055, 1059 (1992). Therefore, as the case at bar was presented, we find that the jury could not have rationally found separable acts accompanied by different mental states to support both the aggravated discharge of a firearm and reckless conduct verdicts as legally consistent.

Having established that the verdicts herein were inconsistent, we must examine the propriety of the trial court's actions with respect to those verdicts. *People v. Porter*, 168 Ill. 2d 201, 214 (1995). "When a jury returns inconsistent guilty verdicts, the trial judge has a duty to send the jury back for further deliberations after additional instructions to resolve the inconsistency." *Porter*, 168 Ill. 2d at 214; *Spears*, 112 Ill. 2d at 410. It is improper for a trial court to enter judgment on one of the inconsistent verdicts and vacate the other, or, as occurred here, to simply ignore one of the verdicts at the time of sentencing. "Where inconsistent verdicts are returned, a trial judge may not usurp the function of a jury by second-guessing 'which of the two verdicts was intended by the jury and which was a result of some misconception.'" *Spears*, 112 Ill. 2d at 410, quoting *People v. Almo*, 108 Ill. 2d 54, 63-64 (1985). Thus, in the

instant case, the trial court's failure to send the jury back for further deliberations to resolve the inconsistent verdicts mandates a reversal and a new trial on the aggravated discharge of a firearm and reckless conduct charges. See *Porter*, 168 Ill. 2d at 214-15; *Spears*, 112 Ill. 2d at 410. Defendant does not contest his unlawful use of weapons conviction and, therefore, no retrial is necessary on this count.

Because we are remanding this cause for a new trial, we consider whether the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. After thoroughly reviewing the evidence, we find it to have been sufficient to support the guilty verdicts. We therefore find that there is no double jeopardy impediment to a new trial. See *Porter*, 168 Ill. 2d at 215; *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). We note that we have made no finding as to defendant's guilt that would be binding on retrial. *People v. Jones*, 175 Ill. 2d 126, 134 (1997); *Porter*, 168 Ill. 2d at 215.

For the reasons stated, the judgment of the appellate court is affirmed in part and reversed in part. We reverse the defendant's convictions of aggravated discharge of a firearm and reckless conduct and remand the cause to the circuit court for a new trial.

> *Appellate court judgment affirmed*
> *in part and reversed in part;*
> *circuit court judgment affirmed*
> *in part and reversed in part;*
> *cause remanded.*