(No. 30200.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EMMETT MARSHALL *et al.*, Plaintiffs in Error.

*Opinion filed Sept. 18, 1947—Rehearing denied November 17, 1947.*

GUNN, J., concurring in part.

CHRISTOPHER C. WIMBISH, and EUGENE WOOD, (WILLIAM H. TEMPLE, and GEORGE N. LEIGHTON, of counsel,) all of Chicago, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Emmett Marshall and George McCree, defendants herein, were indicted in the criminal court of Cook County for the murder of Anthony Tolliver. They selected their own counsel and waived a trial by jury. They were found guilty and Marshall was sentenced to the penitentiary for eighteen years and McCree for fourteen years. At the time of the trial, September, 1946, Marshall was nineteen years old and McCree eighteen. Both join in the writ of error sued out of this court to review the record of their conviction.

The principal contention is that defendants were not proved guilty beyond a reasonable doubt. Other errors are assigned but they refer to the general question.

Tolliver, aged 16, was killed by gunshot wound after dark on the evening of March 20, 1946. It occurred in the vicinity of the intersection of Thirtieth and LaSalle streets in Chicago. Deceased and defendants were friends and, when the shooting occurred, were engaged in the same mission.

It is conceded that the shots which killed Tolliver were fired by Marshall. The prosecution of the case was on

the theory that defendants and their associates had a common design to do an unlawful act, in that they were searching for a rival group of young men on whom they intended to make an assault, and while so engaged Marshall shot Tolliver intending however to shoot some of the rival group. McCree was with Marshall making the search when Tolliver was killed. He obtained the gun for Marshall with which the act was committed.

An apartment building located at Thirty-third and State streets, Chicago, referred to in the record as the Mecca, houses more than 2200 persons. Marshall, his mother, three sisters and two brothers had their home in that building. The evidence is not clear as to the location of McCree's home, but it was either in the Mecca or in the immediate vicinity. He resided with his grandmother, where his father also made his home. Marshall had been employed for several months prior to the occurrence in question, and the evidence of the character witnesses indicates that he had never been in trouble before. McCree was a high-school student, pursuing the third-year course.

Defendants and other young men of about the same age were members of a club known as the Scorpions. Several of the members resided in the Mecca and the others in the immediate vicinity. It does not appear that they had a regular meeting place, but there is evidence which indicates that they regarded the Mecca as their place of assembly. Marshall was president of the club. Other teenage boys, none of whom are identified by name, were members of a club known as the Deacons. One of them is referred to in the evidence by the nickname of "Lightning," but no other identification appears as to the members of such club. Other clubs, such as the Robins and the Buddies, are referred to but their identity is not material to this case. As gathered from the testimony of the Scorpions, it appears that the purpose of the club was to promote athletics, but the facts show that the Scorpions and Deacons

lost sight of the spirit of true sportsmanship and engaged in a series of clashes approaching gang warfare. The city maintained a recreation center on Wentworth Avenue to serve the young people of that community. It is referred to as the Center.

Within a few days preceding the shooting, certain persons entered the Mecca on two different occasions and fired several shots. Some of the witnesses testified that on one of such occasions the shots were directed at Marshall and that another time the shots were at Price, who was a Scorpion residing in the Mecca. The evidence of other witnesses tends to prove that the shots were fired at random and that the bullets lodged in the walls without injury to any person. All the witnesses that testified on this point charged that members of the Deacon group did the shooting but as previously stated, not a single member of that group was identified by any witness. McCree testified that on the day preceding the shooting some of the Deacons made an attack on him at school, that he was afraid of them and after school he took a pistol from his grandmother's apartment without her consent. He testified that he extracted the bullets, put them in his pocket and left the gun at the home of a girl friend. He stated that his purpose in taking the gun was to exhibit it to the Deacons with the hope of intimidation, so that they would stop their attacks on him.

About 7:00 P.M. on March 20, 1946, defendants, Rudolph Price, Fred Brown, Tolliver and three or four others, met at the Mecca where they discussed the attacks the Deacons had made on McCree at school and the shootings that had occurred in the Mecca. Tolliver was not a Scorpion but most of those present at the meeting were. Several of them testified on the trial. The substance of their evidence was that during the meeting it was suggested that they locate the Deacons and discuss their differences with them with a view of establishing friendly

relations between the two groups. Near 7:30 P.M. Mc-
Cree, at the request of Marshall, obtained the pistol he had
left at the home of his girl friend the day before. He
inserted the bullets in it and handed it to Marshall. All
that were present at the meeting left the Mecca to look
for the Deacons. They divided into groups, one of which
included Fred Brown who carried a gun. Tolliver was
with the Brown group. The other group consisted of
Marshall, McCree and Price. Marshall had the gun. There
is evidence that Price carried a weapon but this is denied
by him and others. The group separated, but the purpose
was to proceed in the direction of the intersection of Thir-
tieth and LaSalle streets, where it was understood the
Deacons would be found. Brown and his group went to
the Center which was closed and then proceeded to the
intersection of Thirtieth and LaSalle streets. At the inter-
section they found Curtis Benjamin and two others. Brown
accused them of being Deacons and Benjamin testified that
when Brown made the charge, he pulled a gun and chal-
lenged them to fight the Scorpions. Witness and his com-
panions assured Brown that they were not Deacons, that
they belonged to the Robins and did not want any trouble
with the Scorpions. After a short discussion, all moved
east toward the viaduct from which Marshall fired the
fatal shot. Brown testified that he asked Benjamin and
his associates why they were shooting at the Scorpions,
and they told him they were not Deacons and knew nothing
about the shooting. Brown admitted he had a gun in his
hand when talking to Benjamin but denied that he pointed
it at him. While the Brown group was at the intersection
referred to, the defendants and Price were approaching
the viaduct. They were proceeding along the railroad
track, Marshall on the west side and the other two on the
east. There is a conflict in the evidence as to whether a
train passed between them about this time. It was dark
and Marshall testified that when he was on the viaduct he

saw the boys coming up. (Brown's group, and Benjamin and his associates.) He stated: "I thought they were Deacons, therefore I fired the shots." At least three shots were fired, one of which struck Tolliver, killing him.

When the shooting occurred the groups dispersed, going in various directions. Some, including the defendants, returned to the Mecca. When Marshall returned to the building, he did not know that Tolliver had been shot and when some one stated that Tolliver had been wounded, Marshall said that he was the one that fired the gun at the viaduct. He returned the gun to McCree and fled from the city. He was taken into custody in a few days at Pine Bluff, Arkansas. McCree was arrested in Chicago immediately following the shooting.

It is urged that although the indictment charges murder, the evidence shows that the killing was by misadventure. Section 152 of division I of the Criminal Code defines excusable homicide by misadventure to be when a person doing a lawful act, without any intention of killing, yet unfortunately kills another. (Ill. Rev. Stat. 1945, chap. 38, par. 370.) In the opinion of the trial judge, which is incorporated into the record, it is said that defendants and their associates at the time of the shooting were engaged in finding the Deacons for the purpose of avenging the wrongs that the Deacons had imposed on them. The evidence fully warrants such conclusion. The defendants' and their associates' version of their purpose to find the Deacons and to discuss a settlement of differences between the two clubs does not harmonize with the preparation they made for the meeting as they were leaving the Mecca. They divided into groups with one member of each group armed. Nor does their testimony comport with what Brown and his group considered as the purpose of the search when they contacted Benjamin and his associates at the corner of Thirtieth and LaSalle streets. They thought Benjamin and the others present were Dea-

cons, and, if Benjamin's testimony is to be believed, Brown drew the gun on Benjamin and threatened to kill him to avenge the shootings that had occurred at the Mecca. All of those that left the Mecca in search of the Deacons had the common design to make an assault on the Deacons if they were located, and the application of the principle that the act of one of several engaged in an unlawful act in furtherance of the original design is the act of all makes the evidence of what occurred at the LaSalle street intersection particularly pertinent to the motive which prompted the search for the Deacons. The trial judge said that they evidently intended to take the law into their own hands and avenge the insults and injuries they had received from the Deacons.

It is also urged that Marshall's admission that he had a gun in his possession and fired it does not furnish the elements that constitute the crime of murder. Evidently this proposition is predicated upon the thought that Marshall was justified, as a matter of self-defense, in carrying the weapon, and that his use of the weapon was not reckless and wanton. Under the circumstances shown, the principle has no application for there is nothing on which to base a defense of self-defense.

It is contended on behalf of McCree that the State failed to prove that he had planned, aided, or abetted in the commission of the crime. According to McCree's own testimony, he took the gun from his grandmother's, so that it would be available for his use against the Deacons if they should continue to renew their attacks against him at the school. He also knew of the shooting the Deacons had committed in the Mecca. With such knowledge he procures the gun and participates in furthering the purpose of the group. Aside from his own personal acts he was a participant in an unlawful assembly and by reason of that fact became responsible for the act of Marshall in the killing of Tolliver. In *People* v. *Rudecki,* 309 Ill. 125,

it is said: "If the plaintiffs in error and their codefendants had a common design to do an unlawful act, then in contemplation of law whatever act any one of them did in furtherance of the original design is the act of all, and all are equally guilty of whatever crime was committed." Also see *Hanna* v. *People*, 86 Ill. 243.

It is said that the evidence does not show that the defendants killed Tolliver with malice aforethought, and that it was not shown beyond a reasonable doubt that it was an act of defendants that killed him. The law is well settled that where a person shoots at one with intent to kill and murder, but kills one whom he did not intend to injure, he is not absolved from answering to the crime of murder. (*People* v. *Cohen*, 305 Ill. 506.) The judgment of the trial court is amply supported by the evidence and the guilt of the defendants was proved beyond all reasonable doubt.

The further contention is that the court admitted in evidence written statements of the defendants in reference to how the shooting occurred without first ascertaining whether the statements had been given under circumstances that protected their constitutional rights. The evidence shows that each of the defendants was fully advised as to how they might use his statement, should he give one, and that after such explanations were made, the statements were voluntarily given without any promise or representation as to any penalty that might be imposed. Furthermore, the contention has no merit, for the substance of the statements was the same as their evidence given on the trial.

It is said that the admission of the statement of Marshall prejudiced the rights of McCree. This is based on the theory that McCree was an accessory and not a principal. The court ruled that the confession of Marshall was admissible only as to him. The contention is without merit.

The final contention is that the trial court erred in not hearing testimony in mitigation of the offense charged, for the purpose of considering whether applications for release on probation should be granted. Defendants had been found guilty of murder and one convicted of such an offense cannot, under section 2 of the Probation Act, (Ill. Rev. Stat. 1945, chap. 38, par. 785,) be admitted to probation.

Defendants had a fair trial and the evidence sustains their conviction. The judgment of the criminal court is affirmed as to each defendant.

*Judgment affirmed.*

Mr. JUSTICE GUNN, concurring in part:

I concur in the part of the opinion resulting in the conviction of Marshall but do not believe the judgment affirming his conviction necessarily results in defendant McCree being also guilty of murder. The latter is found guilty because of participating in an unlawful assembly. The fact that McCree loaned Marshall a gun, without something more, is not proof that an unlawful assembly was in existence at the time the shot was fired, nor is there proof an unlawful assembly existed in fact. The proof shows the assembly of which McCree was a part was in the first instance peaceable and assembled for a peaceable purpose. In my judgment it is not sufficient to make McCree guilty of participation in the crime of murder from the fact, alone, that Marshall, from fear or panic, fired the fatal shot and turned a lawful assembly into an unlawful one. The elements of intent and malice necessary to a conviction of murder, under such circumstances, are absent, and for this reason I think the defendant McCree is entitled to a new trial.