THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COREY SHELTON, Defendant-Appellant.

First District (6th Division)   No. 1—95—2676

Opinion filed December 12, 1997.

748

Rita A. Fry, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Annmarie Allen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant was convicted of first degree murder and attempted first degree murder. Defendant was sentenced to concurrent terms of 55 years' imprisonment and 30 years' imprisonment, respectively. On appeal, defendant contends that: (1)

the trial court erred in instructing the jury on the issue of transferred intent; (2) the trial court erred by admitting the victim's obituary notice into evidence and allowing the jury to review it during its deliberations; and (3) the trial court improperly considered gang evidence during the sentencing hearing. Jurisdiction is vested in this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the following reasons, we affirm.

The relevant facts are as follows. On June 11, 1993, William Ware, James Hale, and Rodney Watson attended a party at 6500 South Lowe Avenue in Chicago. At approximately 11:30 p.m., a gunman fired shots into the group that fatally wounded Hale and injured Ware. Neither Ware nor Watson was able to positively identify the shooter, but both testified that the shooter was wearing dark clothing and a hood.

Curtis Lloyd testified that on June 11, 1993, at approximately 11:30 p.m. he was sitting on the hood of his car, which was parked across the street from the scene of the shooting. Shortly before the shooting, Lloyd saw defendant walk past him. Defendant was wearing black clothing and a hood. Lloyd saw defendant cross the street toward 6521 South Lowe Avenue. Lloyd then heard five or six shots fired, and when he turned in the direction of the shots, he saw defendant aiming and shooting a gun toward 6500 South Lowe Avenue. Defendant then ran back across the street. Lloyd identified defendant in a police lineup on June 29, 1993.

Willie Smith testified that he was employed as a security guard for the Chicago Housing Authority. On June 11, 1993, he was patrolling the building at 6500 South Lowe because it was a "Gangster Disciple" hangout surrounded by "Black Disciple" territory, and there were frequent problems in the area. That night, Smith received a complaint that a party at 6521 South Lowe Avenue was too loud. Upon arriving at the address, Smith saw defendant fire a gun, which caused Smith to dive to the ground. Smith heard a total of seven to nine shots and then saw two men run from the area.

Chicago police officer Alvin Boone testified that on June 29, 1993, at approximately 8:30 p.m., he arrested defendant. Boone took defendant to the police station where he was interviewed by Detective James O'Brien. At that time, defendant denied any involvement in the shooting of James Hale. Assistant State's Attorney Peggy Chiampas also interviewed defendant on June 29, 1993. Defendant initially denied any involvement in the shooting, but later admitted to his participation in the crime.

According to defendant, on June 11, 1993, he attended a meeting of the "Black Disciples" gang, of which defendant had been a member

since 1989. Defendant had attained the rank of "co-minister" within the gang and stayed after the meeting to talk with other members of the gang who were in positions of authority. At the "post-meeting," defendant learned that a man by the name of Howard was putting out cigarettes on the faces of girls associated with the "Black Disciples." Howard was a member of the "Gangster Disciples," a rival gang. A leader of the "Black Disciples" then instructed defendant to meet a "crew" of fellow gang members and to find and shoot Howard.

After receiving information that Howard was attending a party near 65th Street and Lowe Avenue, defendant went to that area with fellow gang members Jose, DC, and one other member whose name defendant could not remember. Defendant said that he went with Jose and DC to make sure they shot Howard. Upon arriving at the building where the party was being held, defendant told the driver of the car to wait for them. Defendant, Jose, and DC then exited the car and walked toward the party. Jose and DC approached the building from one side while defendant approached from another side. Defendant saw Jose point a gun and attempt to fire, but the gun jammed so the three men returned to their car. DC then told defendant that his gun would not jam, and defendant told DC to return to the party with Jose to shoot Howard. Jose and DC then went back a second time, and according to defendant, once DC and Jose opened fire, defendant fled the scene. Defendant then went to a party and told a fellow gang member that they had taken care of "business."

JoAnn Bruce testified that she was James Hale's mother. Bruce identified People's exhibit No. 31 as the victim's obituary notice. The notice contained a picture of the victim and included information about the victim and his family. The notice also included a tribute and acknowledgment to the victim. The trial court admitted the notice into evidence and allowed it to go back with the jury during deliberations.

The defense rested without presenting evidence. The jury found defendant guilty of first degree murder and attempted first degree murder.

Initially, the State argues that defendant has waived each of his arguments on appeal by either failing to object at trial or by failing to include such an objection in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). We agree. However, the waiver doctrine acts as a limitation on the parties, not as a limitation on the jurisdiction of this court. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514, 639 N.E.2d 1273 (1994); *West Suburban Bank v. Lattemann*, 285 Ill. App. 3d 313, 318, 674 N.E.2d

149 (1996). We may address issues not properly preserved by the parties in order to achieve a just result and to maintain a uniform body of precedent. *Geise*, 159 Ill. 2d at 514. In the present case, we reach defendant's first two issues on appeal.

Defendant's first argument on appeal is that the trial court erred in instructing the jury on transferred intent. We disagree.

Here, the jury was instructed as follows, based on Illinois Pattern Jury Instructions, Criminal, No. 7.02 (3d 1992):

> "To sustain the charge of first degree murder, the State must prove the following propositions:
>
> First: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of James Hale; and
>
> Second: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to James Hale or another; or
>
> He knew that his acts would cause death of [*sic*] James Hale or another; or
>
> He knew that his acts created a strong probability of death or great bodily harm to James Hale or another."

Defendant argues that the "or another" language should only be provided when the facts of the case show transferred intent, and that the facts of this case do not present such a situation.

■ Under the doctrine of transferred intent, if a defendant shoots at one person, with the intent to kill, but actually kills an unintended victim, the defendant may be convicted of the crime of murder for the death of the unintended victim. *People v. Forrest*, 133 Ill. App. 2d 70, 72, 272 N.E.2d 813 (1971); *People v. Hill*, 276 Ill. App. 3d 683, 688, 658 N.E.2d 1294 (1995). Defendant argues that *People v. Migliore*, 170 Ill. App. 3d 581, 525 N.E.2d 182 (1988), stands for the proposition that the doctrine of transferred intent is inapplicable in situations such as the present case, where the death of the unintended victim might have been the result of a mistaken identity. This interpretation of *Migliore* is incorrect.

■ In *Migliore*, the defendant was found guilty in a bench trial of attempted murder after he fired gunshots at the victim's house. Evidence in the record suggested that the defendant actually meant to fire shots at the occupant of another house on the street. *Migliore*, 170 Ill. App. 3d at 590. Upon discussing the doctrine of transferred intent, the *Migliore* court distinguished the bad-aim scenario from the mistaken-identity scenario. Under the bad-aim scenario, the offender shoots at an intended victim, misses, and strikes an unintended victim. *Migliore*, 170 Ill. App. 3d at 590. Under the mistaken-identity scenario:

" '[I]n the semi-darkness *A* shoots, with intent to kill, at a vague form he supposes to be his enemy *B* but who is actually another person *C*; his well-aimed bullet kills *C*. Here too *A* is guilty of murdering *C*, to the same extent he would have been guilty of murdering *B* had he made no mistake. *A* intended to kill the person at whom he aimed, so there is even less difficulty in holding him guilty than in the bad-aim situation. And of course *A*'s conceivable argument that his mistake of fact (as to the victim's identity) somehow negatives his guilt of murder would be unavailing; his mistake does not negative his intent to kill; and on the facts as he supposes them to be *A* is just as guilty of murder as he is on the facts which actually exist.' " *Migliore*, 170 Ill. App. 3d at 590-91; quoting 1 W. La Fave & A. Scott, Jr., Substantive Criminal Law § 3.12, at 402 (1986).

At no point did the *Migliore* court hold that the doctrine of transferred intent is inapplicable in the mistaken-identity situation. Rather, the court reiterated that a mistake in identity does not negate an intent to kill. Accordingly, the court affirmed the defendant's conviction. *Migliore*, 170 Ill. App. 3d at 590.

■ In the instant case, it is irrelevant whether the death of Hale and the injury to Ware were the result of the shooter's bad aim or mistaken identity because the doctrine of transferred intent is applicable in either scenario. The wording of the first degree murder statute and subsequent commentary on the statute require such a conclusion. According to section 9—1 of the Illinois Criminal Code of 1961 (Code):

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause death:

(1) he either intends to kill or do great bodily harm, to that individual *or another*, or knows that such acts will cause death to that individual *or another*; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual *or another*." (Emphasis added.) 720 ILCS 5/9—1(a)(1), (a)(2) (West 1994).

The committee comments to this section of the Code state:

" 'Or another' recognizes the established principle often described as 'transferred intent': if the offender has the mental state which characterizes murder, he is guilty of murder even if the person whom he kills is not the one whom he intended to kill." 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 14 (Smith-Hurd 1993).

As reflected in the committee comments, the "or another" language was included in the statute to incorporate the concept of

transferred intent wherein the person murdered is not the one whom the offender intended to kill. As such, we find that the doctrine of transferred intent finds equal application in either the bad-aim or the mistaken-identity scenario.

■ In the instant case, the record is silent as to whether the intended victim, Howard, actually was present at the party when the shootings occurred. It is impossible to tell if the shooters fired because: (1) they saw Howard, but missed him; or (2) they mistook Hale or Ware for Howard; or (3) they just wanted to shoot anybody at the 6500 South Lowe building because it was a "Gangster Disciple" hangout. The facts of this case leave no doubt that the shooter fired into a crowd of people, striking Hale and Ware. Since it is unclear whether they were the intended victims, the jury was properly instructed on the doctrine of transferred intent.

Defendant further argues prejudice based on the transferred intent instruction because it was offered to the jury in conjunction with an accountability instruction. Defendant argues that the combination of these instructions relieves the State of its burden to show that the murder of the unintended victim was in furtherance of the crime agreed to by the nonshooter.

Jury instructions in criminal cases "must be read as a whole. 'It is sufficient if the series of instructions, considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense.' " *People v. Terry*, 99 Ill. 2d 508, 516 (1984), quoting *People v. Kolep*, 29 Ill. 2d 116, 125, 193 N.E.2d 753 (1963).

■ Here, the jury received Illinois Pattern Jury Instructions, Criminal, No. 5.03, on accountability, which provides:

> "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.
>
> The word 'conduct' includes any criminal act done in furtherance of the planned and intended act." Illinois Pattern Jury Instructions, Criminal, No. 5.03 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 5.03).

The Committee Note to IPI Criminal 3d No. 5.03 reads, "[u]se the bracketed word 'an' and use the [second] paragraph when the offense charged is different than the planned and intended offense, but done in furtherance of it." IPI Criminal 3d No. 5.03, Committee Note, at 106 (West 1992), citing *People v. Kessler*, 57 Ill. 2d 493, 315 N.E.2d 29 (1974); *People v. Terry*, 99 Ill. 2d 508, 460 N.E.2d 746 (1984).

A person may be held legally accountable for the conduct of another under section 5—2(c) of the Criminal Code of 1961 when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1994).

Section 5—2(c) incorporates the common design rule, which provides that where two or more persons engage in a common criminal design or agreement, any acts committed in furtherance of the plan by any one party are considered to be the acts of all the parties, and all are accountable for those acts. *People v. Eubanks*, 283 Ill. App. 3d 12, 20, 669 N.E.2d 678 (1996), citing *Terry*, 99 Ill. 2d at 508.

■ In the instant case, the State advanced alternative theories of guilt. The State contended that either defendant shot the gun himself, as Lloyd and Smith testified, or that DC and Jose fired into the crowd pursuant to defendant's order for them to kill Howard, as defendant claimed in his written confession. The State may advance alternative theories of guilt. *People v. Coleman*, 248 Ill. App. 3d 371, 377, 918 N.E.2d 466 (1993). The jury could have believed defendant's confession. Had it done so, defendant was guilty of murder and attempted murder under the theory of accountability.

Defendant argues that a defendant may be held accountable for the murder of an unintended victim only when the State shows that the actual crime committed was in furtherance of the crime agreed to by the nonshooter. We agree, and this is exactly what the jury in the instant case was instructed. However, the jury need not find that the actual *result* was intended by the nonshooter; rather, the jury need only find that the act committed was in furtherance of the planned and intended offense. Thus, in the present case, it was unnecessary for the jury to find that defendant intended to kill Ware or Hale. Rather, the jury only needed to find that their injuries were in furtherance of the planned and intended offense, the killing of Howard.

When considered and read as a whole, the instructions in this case fully and adequately informed the jury of the applicable law. To adopt the defense argument would require this court to hold that the State could never proceed under an accountability theory when the jury would also be instructed on transferred intent. We reject this argument. As such, the trial court properly instructed the jury with both paragraphs of IPI Criminal 3d No. 5.03, and we find that it was proper for the trial court to instruct the jury on both accountability and transferred intent.

■ Defendant next argues that the trial court erred when it allowed the victim's obituary notice to go back to the jury. We agree. Obituary notices of the type admitted in this case are becoming increasingly common. Sending them back with a jury during its deliberations can serve no conceivable purpose. However, under the circumstances of this particular case, we find that the error was harmless.

Intentional references to a victim's family are impermissible. *People v. Hope*, 116 Ill. 2d 265, 278, 508 N.E.2d 202 (1986), citing *People v. Bernette*, 30 Ill. 2d 359, 197 N.E.2d 436 (1964). The rationale for excluding references to a victim's family is that such information serves only to prejudice the defendant in the eyes of the jury. *Hope*, 116 Ill. 2d at 275. Even so, comments about the victim's family can constitute harmless error where the defendant is not substantially prejudiced. *People v. Flax*, 255 Ill. App. 3d 103, 110-11, 627 N.E.2d 359 (1993); see also *People v. Pierson*, 166 Ill. App. 3d 558, 565, 519 N.E.2d 1185 (1988) (comments regarding victim and victim's family deemed harmless).

Here, given the overwhelming evidence against defendant, we find that defendant was not substantially prejudiced by the admission and jury review of the obituary notice. Both Willie Smith and Curtis Lloyd saw defendant fire the shots that fatally wounded Hale and injured Ware. Lloyd also identified defendant in a police lineup 18 days after the shooting. In addition, defendant's own statement established that he was involved in the planning and commission of the offense. Further, the record supports the conclusion that the notice was not intentionally brought to the jury's attention through some premeditated act of the State. See *Hope*, 116 Ill. 2d at 278. Accordingly, we find that it was harmless error for the trial court to admit the obituary notice and to allow the jury to consider it during deliberations.

■ Defendant's final argument on appeal is that the trial court erroneously considered evidence of defendant's gang membership during the sentencing hearing. We are required by statutory mandate to hold that defendant has waived this issue by failing to file a posttrial motion alleging such error within 30 days of sentencing. 730 ILCS 5/5—8—1(c) (West Supp. 1995); *People v. Reed*, 177 Ill. 2d 389 (1997).

In light of the foregoing, we affirm the judgment and sentence of the circuit court.

Affirmed.

GREIMAN, P.J., and THEIS, J., concur.