THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY HILL, Defendant-Appellant.

First District (1st Division)   No. 1—98—0102

Opinion filed March 6, 2000.—Rehearing denied August 29, 2000.—Modified opinion filed September 5, 2000.

O'MARA FROSSARD, P.J., specially concurring.

Sam Adam, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Kathleen Bom Lang, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant, Anthony Hill, was convicted of two counts of first degree murder and one count of attempted first degree murder. Defendant was sentenced to a term of natural life as to the murder charges and a concurrent term of 30 years' imprisonment as to the attempted first degree murder count. It is from this judgment of conviction defendant now appeals pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rules 603 and 606 (134 Ill. 2d Rs. 603, 606).

For the reasons that follow, we reverse and remand.

At trial, defendant claimed he acted out of self-defense against the victims, who were the actual aggressors in this case. In support of this defense, defendant presented a significant amount of testimony detailing the harassment and intimidation suffered by him at the hands of Gangster Disciple members, specifically, at the hands of Darnell Harris, a high-ranking officer in the organization. He testified as to how he had been tormented and threatened over the course of several months by gang members because he would not join ranks with them in their war with a rival gang. Ultimately, the culmination of his fear and frustration led him to an emotional breaking point which ended in a violent shooting spree on November 29, 1994.

During the afternoon hours of that fateful day, Darnell Harris and

Charles Buford, both members of the Gangster Disciples, went to defendant's home, where Harris made remarks that defendant construed as a threat against his life. Later that evening, in an apparent attempt to thwart his own untimely demise, defendant and Kyle Edmondson (a codefendant not party to this appeal) donned dark clothing and ski masks, armed themselves with guns and went to the street corner where he knew Harris, Buford and several other members of the Gangster Disciples were loitering. Defendant's claimed intent was to scare the thugs.

Defendant recounted how Andrew Redmond lunged toward him as he approached the gang and when Redmond was within approximately three feet of defendant, he fired his weapon. He also stated he saw Darnell Harris reaching toward his back pocket as if to retrieve a gun. Defendant continued firing his weapon until it was empty of ammunition.

The State, on the other hand, posits that defendant was just another thug vying with the Gangster Disciples for valuable territory from which to peddle drugs. Testimony elicited from State witnesses claimed they were merely standing on the corner, unarmed, when two men in ski masks rounded the corner and opened fire on them. The shooting did not stop until Videl McGee and Andrew Redmond were dead, and Charles Buford lay on the ground, shot twice in the back.

Defendant and Edmondson ran to defendant's home, abandoned the dark clothing and ski masks in the garage, entered the home and went up to the attic apartment. The police arrived at defendant's home within minutes of the shooting and both defendant and Edmondson were arrested.

The jury returned guilty verdicts as to the murder of Andrew Redmond and Videl McGee and the attempted murder of Charles Buford but found the defendant not guilty of attempted murder of Darnell Harris.

On appeal, defendant submits as error at the trial of this cause: (1) the verdicts are logically and legally inconsistent and therefore should have been rejected by the trial court; (2) the absence of the trial judge during the deliberation by the jury was improper and prevented defendant from addressing a legal argument to the court; (3) the trial court improperly refused to tender the jury a second degree murder instruction; (4) the court erred in excluding evidence regarding the victim's prior convictions where the defense was self-defense; (5) the trial court improperly instructed the jury as to the State witness' prior convictions; (6) the trial court improperly restricted defendant's cross-examination of the State's chief witness; and (7) the trial court erred in refusing to allow defendant to offer evidence correcting alleged perjured testimony by a State witness.

We begin our analysis with an examination of defendant's contention that the absence of the trial judge denied the defendant due process and was such an affront to the judicial system as to constitute *per se* reversible error. The gravamen of the issue lies with the fact that the trial judge left the courthouse after tendering the case to the jury and was therefore unavailable to answer questions sent out by the jury, hear legal arguments regarding the tendering of additional instructions to the jury or make any determination regarding the inconsistency of the verdicts.

In support of this contention, defendant cites *People v. Vargas*, 174 Ill. 2d 355 (1996). The *Vargas* case discussed the resulting prejudice to a criminal defendant where the trial judge absents himself from the bench during a portion of the trial or where there is a substitution of judges at some point during the evidentiary phase of a felony trial. The supreme court concluded that a judge's absence from the bench might unduly influence the attitude of the jurors so as to deny defendant an impartial trial. *Vargas*, 174 Ill. 2d at 364-65.

■ We believe defendant's reliance on the *Vargas* case is misplaced. Illinois law is clear that a defendant is entitled to the judgment of one judge up to the time of the retirement of the jury to consider its verdict. *People v. Mays*, 23 Ill. 2d 520 (1962); *Huwe v. Commonwealth Edison Co.*, 29 Ill. App. 3d 1085 (1975). Moreover, jury deliberations have long been regarded as a routine matter not requiring the presence of the trial judge. *Huwe v. Commonwealth Edison Co.*, 29 Ill. App. 3d 1085, 1087 (1975); *Chicago & Alton R.R. Co. v. Merriman*, 86 Ill. App. 454, 455 (1899). Consequently, we do not believe the holding in *Vargas* is applicable to the facts in the case *sub judice*. The mere substitution of judges after the jury begins deliberation is not *per se* reversible error.

Defendant further argues he was prejudiced because the judge who conducted the trial and was familiar with the facts of the case as well as the previous rulings was unavailable to answer the jury's questions and rule on defendant's request to submit additional jury instructions. We agree.

We have painstakingly reviewed the record and include the salient portions of the transcript of the hearing had before the substitute judge after the jury sent out its questions at approximately 3 p.m. The two questions tendered by the jury were: (1) Why is Anthony Hill being charged with attempted first degree murder of Darnell Harris and not of Carlton Logan and Vernon Tony? and, (2) Is the jury allowed to make a recommendation of leniency toward the defendant?

"MR. PETRAKIS [assistant State's Attorney]: As to the second question, we would ask your Honor to instruct the jury that they

are not to consider possible punishment. That punishment is not their function and based on that, they should continue to deliberate.

Generally, that's included in the 101, Judge. I've looked at a copy of the jury instructions in the court file, the same jury instructions that this jury has back there now, and it did not include that language, that they're not supposed to consider the punishment.

So, since it was omitted there and since the jury apparently has some concern about that, we believe that that would aid the jury in their deliberations and would aid—aid this jury in reaching a verdict.

\* \* \*

MR. ADAM [defense counsel]: It is obvious to me, and it's also equally obvious to me that your Honor, with all due deference, cannot answer that question because you do not know the evidence.

\* \* \*

THE COURT: Don't argue to me because I don't know anything about the facts.

MR. ADAM: That's the problem.

\* \* \*

That's why we need Judge Reyna to reassess the situation.

\* \* \*

THE COURT: I'm going to wait before I do anything. I'm just going to let them deliberate for a few minutes more.

I mean, I would prefer Judge Reyna answering any of these questions. I really would because it's his—it's his trial. I mean, I know what answers I would give, and I know what I believe answers that are proper and the answer that should be given, but I prefer that he answer them, so I'm going to wait. I have a death hearing sentence of my own to do upstairs."

The substitute judge then left the courtroom to resume his hearing. Nothing was sent to the jury—not the "101 instruction" suggested by the State, not the second degree murder instruction suggested by defense counsel and not a note saying "you have everything you need to make a decision"—nothing. Nor was the bailiff instructed to advise the jury it would not be receiving any further direction from the judge.

The substitute judge made the following remarks on the record just prior to accepting the jury's verdict:

"As I thought on the matter, I thought about answering their questions, I decided not to answer their questions, and I believe that that was a correct decision to make because I believe if I did answer their questions, then perhaps some kind of reversible error would have been committed since I was not the trial judge. I'm not familiar with the evidence in the case. However, they appear to be

questions that are questions of fact, not of law, and questions that could have been given a direct answer. As to the second questions, to which there was an objection, I said I could answer the question as to whether or not they could make a recommendation of leniency, and an answer could clearly be given, but perhaps it would have been reversible error for a judge other than the trial judge to answer a jury's question."

■ It is clear the substitute judge did not rule but rather refrained from ruling based upon the misapprehension he lacked authority to respond to the jury's questions or that it would be appealable error if he made a ruling. Both the *Huwe* and *Moon* courts considered this very issue and concluded that a substitute judge, appointed after the jury begins its deliberations, is in fact vested with the authority to rule on issues that arise during the deliberations. *Huwe v. Commonwealth Edison Co.*, 29 Ill. App. 3d at 1087 (where after jury foreman advised bailiff the jury was deadlocked substitute judge denied motion for mistrial and tendered deadlocked-jury instruction); *People v. Moon*, 107 Ill. App. 3d 568, 574 (1982) (where substitute judge tendered supplemental jury instruction).

Having concluded the substitution of judge was not itself prejudicial and the substitute judge was vested with the authority to rule, the question then becomes whether the absence of the judge who presided over the trial and was vested with the knowledge of the facts and evidence adduced at trial prejudiced defendant.

The trial judge should be present where a motion or other matter develops that requires personal knowledge of the case. *Huwe v. Commonwealth Edison Co.*, 29 Ill. App. 3d 1085, 1087 (1975); *People v. Moon*, 107 Ill. App. 3d 568, 574 (1982). Neither *Huwe* nor *Moon* addressed this issue as it concluded the jury had been properly instructed.

The State maintains the position that the trial court's nonresponse to the jury's questions was an appropriate decision and cites *People v. Reid*, 136 Ill. 2d 27 (1990). Additionally, the State asserts the questions submitted by the jurors related to questions of fact and therefore could not have been properly answered by any trial judge.

■ It is true that a trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are legally correct and understandable, further instruction would mislead the jurors, jurors raise questions of fact, or an answer or explanation by the court would likely direct a verdict. *People v. Childs*, 159 Ill. 2d 217, 228 (1994).

However, jurors are entitled to have their questions answered. *People v. Reid*, 136 Ill. 2d at 39. A trial court has a duty to instruct the

jury where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused. *Reid*, 136 Ill. 2d at 39, citing *People v. Gathings*, 99 Ill. App. 3d 1135, 1138 (1981). A trial court's decision to answer or refrain from answering a question from the jury will not be disturbed absent an abuse of discretion. *People v. Reid*, 136 Ill. 2d at 38-39.

After reviewing the record, we cannot conclude the substitute judge decided the jury's questions were of the sort that did not require an answer; clearly he did, he stated as much on the record. He said he knew exactly what response he believed appropriate given the circumstances. But he chose to abstain from making a decision. Abstention is not an appropriate response from a trial judge. We hold that the absence of a ruling where one was required was error and manifestly prejudicial to the defendant. We cannot say that the verdict would not have been different had arguments been heard and rulings rendered.

If a substitution of judge is necessary or unavoidable after a case has been tendered to the jury, we believe it incumbent upon both the predecessor judge to advise his successor colleague as to the salient facts and contested prior rulings which may again become issues to be considered and the successor judge to make rulings he believes appropriate, secure in the knowledge he has the authority to do so.

We conclude on review of this issue alone that remand is warranted. However, defendant maintains the verdicts ultimately rendered by the jury were both legally and logically inconsistent and the doctrine of collateral estoppel prohibits a retrial in this matter. We disagree.

Verdicts are legally inconsistent if they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist. *People v. Frias*, 99 Ill. 2d 193 (1983). Logically inconsistent verdicts, on the other hand, arise when verdicts, though not based upon the same elements, involve both the acceptance and rejection of the same theory of the case proposed by the State or defense. *People v. Westpfahl*, 295 Ill. App. 3d 327, 334 (1998). Logically inconsistent verdicts in criminal trials may stand, while legally inconsistent jury verdicts cannot. *People v. Klingenberg*, 172 Ill. 2d 270, 275 (1996); *People v. Rhoden*, 299 Ill. App. 3d 951 (1998).

These verdicts may be logically inconsistent as they suggest both a belief and a disbelief of defendant's theory of self-defense. However, logical inconsistencies do not mandate a reversal of the defendant's conviction. *People v. Rhoden*, 299 Ill. App. 3d 951; see also *People v. Whitlock*, 174 Ill. App. 3d 749, 764 (1988).

As to whether the verdicts are legally inconsistent, defendant

contends the verdicts indicate he was simultaneously justified and without justification in his shooting of the victims. Defendant postulates that by returning a verdict of not guilty as to the attempted murder of Harris, the jury believed defendant's theory of self-defense; he was justified in shooting at Harris. Therefore, defendant reasons, if he was justified in the shooting of Harris, the doctrine of transferred intent must necessarily be applied and the legal justification for shooting at Harris thereby transferred to the other three victims. We disagree.

The doctrine of transferred intent applies to situations where "innocent bystanders" are injured. See *People v. Shelton*, 293 Ill. App. 3d 747 (1997); *People v. Adams*, 9 Ill. App. 3d 61 (1972). The doctrine holds that one who intends to kill another and kills an unintended victim is not absolved from answering to the crime of murder. See *People v. Marshall*, 398 Ill. 256 (1947). Conversely, when one acts in self-defense and accidentally kills another, he is relieved of criminal liability. *People v. Robinson*, 163 Ill. App. 3d 754 (1987).

In order for the doctrine of transferred intent to apply in this case, defendant must have justifiably shot at Harris and injured three other innocent bystanders. The record clearly indicates that is not what happened. The three other victims were not innocent bystanders, they were Gangster Disciples; members of the very street gang that defendant testified had tormented him for many months. Moreover, defendant testified he knew Harris, Buford, Redmond and McGee were Gangster Disciples and that he knew they, along with others, were standing on the corner of Cermak and Kildare when he armed himself with a weapon and proceeded to that very corner to scare "them." Clearly, Buford, Redmond and McGee were intended targets of defendant's "scare tactics." It is simply disingenuous to describe these individuals as "innocent bystanders" on appeal when that characterization does not comport with the evidence adduced at trial.

Additionally, defendant's theory is premised on the presumption the jury found defendant not guilty of the attempted murder of Harris because it believed the asserted defense of self-defense, thereby excusing defendant's conduct as justified. The truth is we do not know what factors motivated the jury to find defendant not guilty of the attempted murder of Harris. The relevant question for our consideration, then, is whether the finding of not guilty of the attempted murder of Harris necessarily negates or contradicts the essential elements of the crimes for which he was convicted, *i.e.*, one count of attempted murder and two counts of murder. We conclude it does not.

We believe the rationale set forth in *People v. Spears*, 112 Ill. 2d 396 (1986), and *People v. Fornear*, 176 Ill. 2d 523 (1997), is dispositive.

Both of those cases determined the essential framework for analyzing the consistency of jury verdicts in the troublesome context of multiple shots or victims is whether the trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent. *Fornear*, 176 Ill. 2d at 531-32; *Spears*, 112 Ill. 2d at 405-06. Here, defendant testified that, at the time of the shootings, he saw Harris reach behind him and defendant believed Harris may have been reaching for a weapon. On the other hand, defendant stated none of the other individuals appeared to be armed. Based upon defendant's testimony alone, the jury could have concluded defendant was justified in shooting at Harris based on the reasonable belief Harris was in possession of a gun but not justified in shooting at other individuals whom defendant believed were unarmed. Therefore, we reject defendant's contention the verdicts were legally inconsistent and hold the verdict finding defendant not guilty of the attempted murder of Harris does not impact the validity of the other three guilty verdicts. Because we have concluded the verdicts are not legally inconsistent, we need not address defendant's claim of collateral estoppel.

Additionally, after thoroughly reviewing the evidence, we find it to have been sufficient to support each of the guilty verdicts. We therefore find no double jeopardy impediment to a new trial. *People v. Porter*, 168 Ill. 2d 201, 215 (1995). We have further made no finding as to defendant's guilt that would be binding on retrial. *People v. Jones*, 175 Ill. 2d 126, 134 (1997); *Porter*, 168 Ill. 2d at 215.

Accordingly, the judgment of the trial court as to the three guilty verdicts is reversed and remanded to the trial court for further consideration. The not guilty verdict rendered as to the charge of attempted murder of Darnell Harris remains undisturbed.

Reversed and remanded.

GALLAGHER, J., concurs.

PRESIDING JUSTICE O'MARA FROSSARD, specially concurring:

I agree with the majority opinion but address the remaining issues which are likely to reoccur on retrial. Defendant argues that the trial court erred in refusing to give an instruction for second degree murder where defendant asserted self-defense and where the jury questioned whether it could find defendant guilty of something less than first degree murder. The jury sent a question to the trial court asking whether it could recommend leniency for the defendant. The prosecution maintains that there was no evidence to support a second degree murder instruction.

The United States Supreme Court has observed that, "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887 (1988). The question as to whether a defendant has met the evidentiary minimum for such an instruction is a matter of law. *People v. Lockett*, 82 Ill. 2d 546, 553 (1980). A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he believes the circumstances to be such that, if they exist, would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable. 720 ILCS 5/9—2(a)(2) (West 1994).

Factors that we may consider in determining if a second degree murder instruction is justified include, but are not limited to, the defendant's testimony, intent or motive, the type of wound suffered by the victim, any previous history of violence, any physical contact between the defendant and victim, and the circumstances surrounding the incident. See *People v. Everette*, 141 Ill. 2d 147, 158 (1990). Applying those factors in the present case, an instruction on second degree murder was warranted. Here, the defendant asserted the affirmative defense of self-defense. At trial, the defendant admitted to killing Andrew Redmond and Videl McGee as well as shooting Charles Buford. However, he testified that he did so in self-defense because he heard what sounded like gunshots and he believed that Redmond and Darnell Harris were armed.

At trial defendant described incidents with the Gangster Disciples in which various gang members threatened defendant over a course of three months. Defendant portrayed Darnell Harris as one of the aggressors in this case who approached defendant on several occasions and demanded that defendant join the Gangster Disciples. The first incident occurred in August 1994, when Harris and a person named K-Town approached defendant at his home and demanded money. Defendant reported this incident to the police. During the next three months, defendant stated that the Gangster Disciples continued to harass him. Defendant related that Harris, Buford and several other Gangster Disciples beat up codefendant Edmondson in November 1994. On the day of the incident, defendant testified that Harris, along with Buford, came to defendant's home and again threatened him.

Whether the conduct here qualified as first degree murder, second degree murder or self-defense was a question of fact for the jury to resolve. There is a factual dispute as to whether defendant, Harris or Redmond was the initial aggressor who set into motion a course of felonious conduct. Defendant's testimony at trial was consistent with

his statement to the police and to an assistant State's Attorney after his arrest. Defendant maintained that he and Edmondson went to the corner to scare the gang members. Defendant repeatedly testified that he feared for his life and that he used force to prevent an imminent threat of death or great bodily harm. Neither Harris nor Buford was called to rebut defendant's testimony as to the events and threats preceding the shooting.

There is evidence that a jury could believe and find that defendant did not commit first degree murder, but fired the weapon under the unreasonable belief that circumstances justified the use of deadly force and was, therefore, guilty of second degree murder. Therefore, based on the record, including the history of aggression between defendant and the Gangster Disciples, the previous confrontations and the testimony of defendant, there is sufficient evidence of self-defense to warrant an instruction on second degree murder.

Defendant further contends that the trial court erred in excluding evidence regarding Andrew Redmond's prior convictions for aggravated battery and that the jury instructions misinformed the jury as to the use of Darnell Harris' prior conviction for attempted murder. Where, as here, the theory of self-defense is raised, evidence of the victim's aggressive or violent character is relevant (1) to show that defendant's knowledge of the victim's behavior and tendencies affected his perception of, and reaction to, the victim's actions and (2) to support the defendant's version of the facts where there are conflicting accounts of what happened. *People v. Lynch*, 104 Ill. 2d 194, 199-201 (1984). Evidence of the victim's past acts of violence aids the jury in resolving the question of who was the initial aggressor. *People v. Bedoya*, 288 Ill. App. 3d 226, 239 (1997).

Andrew Redmond, the person whom defendant claimed lunged at him on the street corner, was convicted in 1980 and 1988 of aggravated battery. Clearly, Redmond's violent character and aggressive disposition were relevant where defendant asserted that he acted in self-defense and that Redmond was the initial aggressor. Convictions for crimes of violence, such as battery and aggravated battery, are reasonably reliable evidence of a violent character. *Lynch*, 104 Ill. 2d at 201; *Bedoya*, 288 Ill. App. 3d at 236. As such, Redmond's 1988 conviction for aggravated battery should have been admitted as evidence of Redmond's aggressive or violent character.

Defendant, relying on *Lynch*, asked the judge to instruct the jury that the prior conviction of a witness can be considered as to the aggressive or violent character of the witness. The jury was informed with Illinois Pattern Jury Instructions, Criminal, No. 3.12 (3d ed. 1992) (hereinafter IPI Criminal 3d) that the prior convictions of a wit-

ness could be considered as to the witness' credibility. A witness' credibility as a whole is attacked when the evidence shows that he has a propensity for violence. However, IPI Criminal 3d No. 3.12 does not completely and accurately state the law when the theory of self-defense is raised and evidence of the victim's aggressive and violent character is offered to show who was the aggressor.

In conjunction with IPI Criminal 3d No. 3.12, the appropriate IPI instruction that should be used based on the evidence is IPI Criminal 3d No. 3.12X (Supp. 1996). This instruction states:

> "In this case, because the State must prove beyond a reasonable doubt the proposition that the defendant was not justified in using the force which he used, you may consider evidence of [name of victim]'s prior conviction of the offense of [conviction for violent crime] in deciding whether the State has proved that proposition."

IPI Criminal 3d No. 3.12x (Supp. 1996). The Committee Note to IPI Criminal 3d No. 3.12X (Supp. 1996) states that this instruction should be used only when evidence of the victim's prior conviction for a crime of violence has been admitted pursuant to *Lynch*.

In the present case, defendant asked the judge to instruct the jury on a non-IPI instruction which was more specific than IPI Criminal 3d No. 3.12X (Supp. 1996). Defendant sought to have the jury instructed that it can consider the victim's prior conviction in determining his aggressiveness and violent character. However, a non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon. *People v. Tsombanidis*, 235 Ill. App. 3d 823, 838 (1992).

IPI Criminal 3d No. 3.12X (Supp. 1996) was devised to address the nature of evidence regarding a victim's prior conviction for a crime of violence when the defendant claims self-defense pursuant to *Lynch*. As the Illinois Supreme Court held in *Lynch*, "when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence." *Lynch*, 104 Ill. 2d at 200. Moreover, the *Lynch* court recognized that convictions of a victim for crimes of violence are reasonably reliable evidence of a violent character and are admissible for the purpose of proving that the victim was the aggressor. *Lynch*, 104 Ill. 2d at 201. Thus, the appropriate instruction in this case is IPI Criminal 3d No. 3.12X (Supp. 1996).

Defendant also argues that the trial court improperly restricted cross-examination of Charles Buford as to his gang involvement. Evidence of gang membership is admissible where there is sufficient proof that gang membership is related to the crime charged. *People v. Mal-*

*donado*, 240 Ill. App. 3d 470 (1992). In this case, questions relating to the gang activity of Buford were clearly relevant and should have been allowed. These questions directly related to Buford's motive and credibility as well as to whether he was one of the aggressors.

Defendant's last issue is that the trial court improperly restricted defendant's cross-examination of Darnell Harris. Harris testified on direct examination that he was at Cermak and Keeler Streets when defendant drove up and said he wanted to sell drugs on those two streets. During opening statements, however, the State indicated that defendant and Harris were standing at Cermak and Kildare. Defense counsel interpreted this statement to mean that Harris lied to the prosecutors.

In an effort to impeach Harris, defense counsel sought to either call the assistant State's Attorney trying the case to testify or, in the alternative, requested that the trial court direct the assistant State's Attorney to inform the jury that Harris' testimony was inaccurate. In essence, defendant sought to impeach Harris with a comment the assistant State's Attorney made during opening statement. Opening statements are not evidence. Further, a witness can only be impeached with a prior inconsistent statement that the witness made, not that another person made. 134 Ill. 2d R. 238. As such, the trial court appropriately denied defendant's request.